**James Paul DUNCAN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 479S105.**

Supreme Court of Indiana.

Nov. 26, 1980.

Rehearing Denied Feb. 3, 1981.

Terry E. Johnston, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, James Paul Duncan, was convicted by a jury of seven counts of unlawful dealing in schedule II controlled substances, Ind.Code § 35–24.1–4.1–2 (Burns 1975), and one count of unlawful dealing in schedule IV controlled substances, Ind.Code § 35–24.1–4.1–3 (Burns 1975). He was sentenced to seven terms of thirteen years and one term of ten years, the terms to be served concurrently. He now appeals raising the following issues:

1. Whether defendant was improperly required to proceed *pro se* in the trial even though he had not made a clear and unequivocal request to do so;

2. Whether certain testimony was erroneously admitted;

3. Whether the prosecutor's allegedly improper remarks denied defendant his right to a fair trial;

4. Whether defendant was denied his right to be present at all stages of the trial when the jury was permitted to view the evidence in his absence;

5. Whether the trial erred in failing to grant defendant credit for time served prior to sentencing; and

6. Whether the trial court erred in giving defendant multiple sentences for the violation of one statutory provision.

A summary of the facts from the record most favorable to the state shows that James Menn was an undercover police officer working with the Porter County Narcotics Unit. He was working with an informant named Dick Rush. Menn was introduced to defendant at Rush's apartment. A few days later, on August 3, 1977, Menn found out defendant had some drugs to sell. He went with Rush to an apartment where several people were present including defendant. While Menn was seated at the dining room table, defendant came into the room with a brown paper bag and dumped several bottles and pills out onto the table. Menn examined the drugs and then asked defendant how much he wanted for the total amount. Defendant said he wanted $540 for the whole lot.

Menn did not have that much money with him so he told defendant he would be back in a little while after he tried to collect more money. He was only able to collect $250 at that time. When he returned to the apartment, defendant gave him two of the bottles and fifty of the pills for the $250. They agreed that the remaining portion of the drugs would cost $290. The next day Menn again met defendant at his apartment and purchased the rest of the drugs for $290.

I.

Defendant first contends that he was unconstitutionally required to proceed to trial without being represented by an attorney. The record shows that defendant had been appointed pauper counsel, Bruce Dumas, several months prior to the trial. Dumas had interviewed defendant and filed several pretrial motions in this case. About ten days prior to the trial date, defendant indicated he was not happy with Dumas. The trial court held a hearing on August 17, 1978, and questioned defendant about his problems with his counsel. At that time, defendant stated he was not satisfied with Dumas's pretrial preparation and would

rather represent himself than have Dumas represent him. However, after extensive questioning by the trial court and while he was on the witness stand, defendant stated he *did* want Dumas to represent him.

On the morning of the trial, defendant again told the trial court he did not want Dumas to represent him. The court then questioned both defendant and Dumas as to the extent of pretrial preparation and the specific reasons defendant was not satisfied with the representation. After further extensive questioning, the trial court determined that the representation had been adequate up to that time. He explained to defendant his constitutional rights regarding representation by counsel and explained that defendant did not have the right to have the court appoint someone defendant chose, but that it was up to the discretion of the court whom to appoint as pauper counsel. He asked defendant if he wished to proceed to trial with Dumas as counsel or in an advisory position, but defendant stated he did not want Dumas. He told the court he would like another attorney but definitely would not have Dumas. The trial court told defendant that the trial could not be postponed and so defendant would have to proceed with the trial *pro se.*

■ Defendant now alleges that he was forced to represent himself and was denied his constitutional right to representation by counsel. It is clearly established that a defendant charged with having committed a felony be allowed representation by counsel. *German v. State*, (1978) 268 Ind. 67, 373 N.E.2d 880; *Gideon v. Wainwright*, (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. An indigent, however, does not have an absolute right to counsel of his own choosing. This is discretionary with the trial court and can be reviewed only for abuse of that discretion. *Shoulders v. State*, (1978) 267 Ind. 538, 372 N.E.2d 168; *State v. Irvin*, (1973) 259 Ind. 610, 291 N.E.2d 70. The services of an attorney appointed by the court may not be forced upon a pauper defendant, but if the defendant refuses to be represented by the appointed counsel, he must find some method

to employ his own counsel or proceed in *propria persona. State v. Irvin, supra.* A defendant may not through a deliberate process of discharging retained or appointed counsel whenever his case is called for trial disrupt sound judicial administration by such delaying tactics. *United States v. Hampton*, (7th Cir. 1972) 457 F.2d 299, *cert. den'd.* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101.

■ Defendant argues that he was not advised of all the dangers and disadvantages of self–representation before he made the choice to represent himself. However, the record shows that defendant was aware of these problems since he stated to the court that he realized his own knowledge of the law was very limited and that he needed an attorney. It is clear that under the circumstances of this case defendant was provided with his constitutional right to court–appointed counsel, but voluntarily chose to proceed with the trial without representation. There was no error here.

II.

■ Defendant next argues that certain testimony of Officer Menn concerning a conversation with the informant, Rush, was hearsay and prejudicial and that the admission of this testimony denied him a fair trial. However, defendant did not object to this testimony on the basis of hearsay at the trial. It is well settled that error may not be predicated on the admission of testimony unless there was a timely and specific objection in the trial court. *Bell v. State*, (1977) 267 Ind. 1, 366 N.E.2d 1156; *Rinard v. State*, (1976) 265 Ind. 56, 351 N.E.2d 20. Thus, any error on the basis of hearsay was waived.

■ Defendant further complains that this testimony was highly prejudicial and irrelevant. The informer had allegedly stated that he knew the drugs defendant was selling were of good quality because they were stolen from a drugstore. Defendant has not shown how this statement was prejudicial since there is no indication in it that defendant was the one who actu-

ally committed the robbery. The burden is on defendant to show how his substantial rights were prejudiced. *Phelan v. State*, (1980) Ind., 406 N.E.2d 237; *Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686.

### III.

█ Defendant next alleges that the prosecutor made several improper remarks during the trial, during his closing argument and during voir dire and that these remarks denied him a fair trial. During the final argument, the prosecutor made a comment to the effect that a $540 total purchase was big time drug dealing. He also made allegedly improper comments on the profitability and disgusting nature of drug dealing and referred to defendant as a drug dealer. However, the record shows that defendant made no objection to any of these remarks at the time they were made. It is axiomatic that if the defendant fails to object to the prosecutor's closing remarks he waives any error resulting from the remarks. *Pavone v. State*, (1980) Ind., 402 N.E.2d 976; *Womack v. State*, (1978) Ind., 382 N.E.2d 939.

█ Defendant also failed to object to the prosecutor's comments and questions during voir dire and has waived any error therein. At one point during the trial, the prosecutor referred to tape recordings which were never offered into evidence. Defendant now complains that this remark was improper and implied to the jury that they had not heard all of the evidence. However, there was no objection to this comment at the time it was made and any error here is also waived. We find no showing in any of the above instances of fundamental error which would require us to overlook the well established rules of procedure requiring timely and specific objections at trial. *Gee v. State*, (1979) Ind., 389 N.E.2d 303; *Decker v. State* (1979) Ind. App., 386 N.E.2d 192.

### IV.

█ After the state had completed the direct examination of its chief witness, Officer Menn, the prosecutor asked that the jury view all the evidence which had been admitted up to that point. The exhibits consisted of several packages containing the drugs allegedly purchased from defendant, reports from the toxicologist, and a picture of defendant. The trial court stated that there would be a short recess and the jury accompanied by the bailiff, would be sent to the jury room to view the exhibits rather than have them passed back and forth in the courtroom.

Defendant now argues that this procedure was improper and denied him the right to be present at all critical stages of his trial. He argues that the exhibits could have been subjected to improper use by the jury. However, there was no objection to this procedure at trial and for the reasons discussed in Issue III, above, no error has been preserved for review.

### V.

█ Defendant next alleges that the trial court erred in failing to grant him credit for time served prior to sentencing pursuant to Ind.Code § 35–8–2.5–1 (Burns 1975) (now repealed). The state urges that he should not be allowed any credit since he was incarcerated and waiting for trial on separate criminal charges prior to the filing of the information on the instant charge. We agree.

This information in the instant case was filed on March 27, 1978, and defendant had been incarcerated for several months before that date as the result of another charge. He was sentenced to the state prison on May 16, 1978, for the separate offense and was tried and sentenced on the instant charge in August, 1978. He now urges that he should be allowed credit for some three months prior to the March 27 date. The basis for this contention is his allegation that he was informed by his attorney on January 6, 1978, that the prosecutor had enough information to file the charges in the instant case but was withholding filing them at that time.

There is no merit to this contention. The statute clearly states in pertinent part that:

"the sentenced person be given credit toward service of his sentence for any days spent in confinement *as the result of the criminal charge* for which sentence is imposed." Ind.Code § 35–8–2.5–1 (Burns 1975) (emphasis added).

The credit will not be allowed for time served as a result of another separate charge. *Dunn v. State*, (1976) 171 Ind.App. 206, 355 N.E.2d 870. This clearly applies to the time period from January 6, 1978, to March 27, 1978, as defendant was being held only as a result of the other charge during that period. It also applies to the period after May 16 when he was actually in the state prison.

 During the period from March 27, 1978, to May 16, 1978, defendant was being held as a result of two separate charges. He apparently wants to claim credit for this time served and apply it to each charge. We find no basis for this contention. The only sensible application of the statute under these circumstances is to allow defendant only one credit for the time served. Although there is nothing in the record on this point, we must assume defendant has already received one credit for the time served applied to the other offense, since he made no allegations to the contrary. He is not entitled to a second credit for the time served. We find no error here.

## VI.

 Defendant's final allegation of error is that the trial court should not have imposed multiple sentences under Ind.Code § 35–24.1–4.1–2, *supra*, since these seven counts were founded upon the violation of a single statutory provision and arose from the same transaction. The state argues that since seven different substances were sold, there were seven violations even though all seven substances were classified under schedule II. This Court has not previously considered the question of whether or not the simultaneous sale of more than one of the controlled substances proscribed by a single statutory provision would constitute separate offenses. However, our statute, for the most part, contains the provisions of the Uniform Controlled Substances Act and the question has been considered in other jurisdictions with similar statutes. A majority of these opinions find that only one offense is committed when a single transaction is involved between the same principals at the same time and place. The Indiana Court of Appeals has also reached this conclusion. *Bates v. State*, (1978) Ind. App., 381 N.E.2d 552; *Martin v. State*, (1978) Ind.App., 374 N.E.2d 543.

The United States Supreme Court decided an analogous issue in *Bell v. United States*, (1955) 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. There the defendant pleaded guilty to two counts charging violations of the Mann Act (18 U.S.C. § 2421), each referring to a different woman. The transportation was effected in the same vehicle, on the same trip. The trial court imposed consecutive sentences and the court of appeals affirmed (6th Cir. 1954), 213 F.2d 629. The Supreme Court reversed, stating that:

"if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses .... " 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910–11.

Other courts have followed this reasoning in holding simultaneous possession or sale of more than one type of controlled substance in a single transaction to be one offense. *People v. Manning*, (1978) 71 Ill.2d 132, 15 Ill.Dec. 765, 374 N.E.2d 200; *State v. Homer*, (1975) 22 Or.App. 328, 538 P.2d 945; *State v. Butler*, (1970) 112 N.J.Super. 305, 271 A.2d 17; *United States v. Martin*, (W.D.Pa.1969) 302 F.Supp. 498, aff'd, 428 F.2d 1140 (3rd Cir. 1970), *cert. den.*, 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269; *Braden v. United States*, (8th Cir. 1920) 270 F. 441.

Our statute, under which defendant was convicted, is entitled "Unlawful dealing on a controlled schedule I, II, or III substance," and is clearly intended to proscribe dealing in drugs. The statute does not specifically state that the penalties are intended to be additive when different substances are involved in a single transaction. It is our opinion, therefore, that a single sales

transaction between the same principals at the same time and place which violates a single statutory provision does not justify conviction of and sentence for separate crimes even though more than one controlled substance is involved.

However, in the instant case, the actual delivery of the drugs and exchange of the money took place in two distinct parts on different days, so two separate deliveries were involved. We find, therefore, that there were two counts of unlawful dealing in schedule II controlled substances under these circumstances. Accordingly, this cause is remanded to the trial court with instructions to vacate the judgments and sentences on five of the convictions under Ind.Code § 35–24.1–4.1–2, *supra.*

The judgment of the trial court is in all other respects affirmed.

DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in part and dissents in part with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, concurring in part and dissenting in part.

I concur in the majority opinion in the first five issues disposed of therein, but dissent to Issue VI in said opinion.

My dissent in Issue VI is based on the fact that the trial court properly found the defendant to be guilty of seven counts of delivery of controlled substances and sentenced him on all seven counts. Although the State had originally charged that the deliveries in these seven counts involved both Schedule I and II drugs, they later amended the informations to read that they were substances classified under Schedule II. The counts on which this defendant was found guilty were Count I, delivery of amphetamine in the amount of 8.776 grams; Count II, delivery of amobarbital and secobarbital in an amount of 21.919 grams; Count III, delivery of secobarbital in the amount of 21.949 grams; Count IV, delivery of amphetamine in the amount of 37.-353 grams; Count V, delivery of codeine in the amount of 3.157 grams; Count VI, de-livery of amphetamine and amobarbital in the amount of 23.731 grams; and Count VII, delivery of amobarbital and secobarbital in the amount of 27.996 grams.

The evidence showed that this appellant had a large number of different types of drugs for sale. Each of the items was packaged as a unit for sale of that item, some of them being the pure drug and some of them mixes, as is apparent from seeing the descriptions in the charges. The undercover police officer and the appellant discussed prices and finally agreed on the price of $540 for all of the drugs involved. The officer then picked out certain of the items and purchased them for $250 on that day as that was all the money he had. He came back the next day with $290 and purchased the rest of the drugs.

The statute under which appellant was charged on all seven counts was § 35–24.1–4.1–2, which is entitled "Unlawful Dealing in A Controlled Schedule I, II, or III Substance.–Except as authorized by this Article (§ 35–24.1–1–1 and 24–24.1–6–1(c)) a person is guilty of unlawful dealing in a Schedule I, II, or III controlled substance if he: (1) knowingly manufactures or delivers a controlled substance pure or adulterated classified in Schedule I, II, or III except marijuana or hashish; or ...." Delivery is defined as an actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. Ind.Code § 35–48–1–1–. (Burns 1979 Repl.)

It is apparent then, under this statute, that each time a person delivers or transfers a controlled substance that falls under any of Schedules I, II, or III, he commits the crime described in said statute. The fact that several sales take place in one "transaction" is of no moment whatever in determining whether one crime or several have been committed. The test to use in determining whether multiple counts are the same for purposes of double jeopardy is not whether they arose from the same act but rather on the identity of the offenses themselves. *Elmore v. State*, (1978) Ind., 382 N.E.2d 893; *Adams v. State*, (1979) Ind., 386 N.E.2d 657.

Appellant, here, on two different days, sold five different drugs, namely, amobarbital, secobarbital, codeine, amphetamine and phenobarbital. He further sold two separate quantities of some of these drugs that were mixed, one mixture being amobarbital and secobarbital, and the other being amphetamine and secobarbital. What the majority is saying is that since this all took place in one "transaction" he is guilty of one crime and committed no further crimes in selling the other six drugs or mixtures of drugs, even though each transfer was a delivery of a controlled substance under the statute. These were not fungible items, but were separate quantities of different substances, held for sale in the individual units in which they were found here. Nor can this be compared with one robbing a victim and taking several items from his person at the same time. There, the crime is the taking of property from the person of the victim by putting in fear, and this is one act, while the perpetrator is extracting several items from the person of that victim. Here, there is a delivery of a controlled substance each time the perpetrator makes a delivery of a substance that is in violation of the statute. In *Elmore, supra,* and *Adams, supra,* we established the principal that when a conviction for one crime requires proof of facts in addition to those required for convictions of other crimes, then the offenses are not the same and separate sentences can properly be imposed for each. As we said in *Elmore,* "Focus of a proper double jeopardy analysis must be on whether offenses to be prosecuted and punished are same and not whether offenses spring from same act or operative circumstances...."

We have faced the same problem in situations where more than one person was robbed in the same robbery. In *Williams v. State,* (1979) Ind., 395 N.E.2d 239, we held that an individual who robs a business establishment and takes that business' money from four employees, can be convicted of only one count of armed robbery since the offense was taking of the business' money by force and by putting in fear and the fact that it was taken from four different tellers

in the same bank did not change that offense into four separate ones. *Williams, supra,* was followed by *Rogers v. State,* (1979) Ind., 396 N.E.2d 348 in which a grocery store's money was taken from two separate employees of that grocery store. We held, however, in *McKinley v. State,* (1980) Ind., 400 N.E.2d 1378, that where a robber took the property belonging to the business and also took the personal property of the person in the store, it constituted two counts of armed robbery since there were two offenses of taking the property of another by force and by putting in fear. We followed *McKinley, supra,* in *Ferguson v. State,* (1980) Ind., 405 N.E.2d 902, in which one robber took the property of the business involved and also the personal property of the employees of the business.

In the case before us, delivery of codeine was a separate and distinct offense from the delivery of amphetamine, requiring proof of different facts and establishing a different offense than the other. The same can be said of all of the other six counts, even though each separate substance may be broadly classified as a Schedule II controlled substance. The appellant therefore committed a separate crime with the delivery of each substance and the trial court properly sentenced him on each of the seven counts. To hold otherwise would be to enable a drug dealer to arrange to sell every conceivable type of drug under the statutes forbidding the sale of them, in lots of semi loads or railroad boxcar assignments and be guilty of one delivery in the whole transaction. This certainly was not the intention of the legislature and is not the law as we have found it in the above cases.

The majority, in its opinion, followed a Court of Appeals case, *Martin v. State,* (1978) Ind.App., 374 N.E.2d 543, which cited no authority but simply held that where a defendant was found to possess controlled substances classified in Schedules I, III, and IV, he had committed one single crime of possession. I think that holding was in error and we should reverse it. The same reasoning in *Martin, supra,* was followed by the Court of Appeals in *Bates v. State,*

(1978) Ind.App., 381 N.E.2d 552 in regard to dealing in controlled substances. This holding is likewise in error and should be reversed.

GIVAN, C. J., concurs.