Robert Lee DIXON, Appellant,

v.

STATE of Indiana, Appellee.

No. 181S7.

Supreme Court of Indiana.

July 30, 1982.

Perry H. Harrold, Wilson, Coleman & Roberts, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Robert Lee Dixon was tried by jury in the Marion Superior Court and found guilty of theft, a class D felony, and was also found by the jury to be an habitual criminal. The court sentenced the defendant to four (4) years for the theft conviction to which was added an additional thirty (30) years for the finding of habitual criminal.

Appellant raises eleven issues for our consideration in this direct appeal, as follows: 1) the constitutionality of the habitual criminal statute; 2) error of the trial court in denying defendant's motion to represent himself; 3) denial of defendant's motion for a mistrial due to irregularities in the verdict form of the jury; 4) refusal of the trial

court to inform the jury as to the sentence imposed upon the finding of habitual criminal; 5) error of the trial court in overruling defendant's motion requesting that he be tried by the regular judge rather than a pro tem; 6) the finding that a theft conviction of the defendant was a felony under the habitual criminal portion of the trial; 7) error of the trial court in giving its final instruction No. 15(a) concerning flight; 8) error of the court in admitting State's Exhibit 5 into evidence; 9) failure of the trial court to enforce the defendant's rights under Ind.R.Crim.P. 4; 10) sufficiency of the evidence; and 11) inadequacy of counsel.

The facts most favorable to the State showed generally that on May 27, 1979, Indianapolis Police Officer Kenneth Evans had been assigned to traffic control on 10th Street, in connection with the Indianapolis 500 Mile Race. The date was on a Memorial Day Sunday. Officer Evans was in uniform but was in his personal Chevrolet automobile. He had been relieved of duty at the race track and was on his way to his home on the south side of Indianapolis. On his way home, he decided to patrol the yards of several trucking companies on the route because he said he was aware that there were problems in this particular area. He stopped at a trucking company located in the 700 block of West Street in the city of Indianapolis, and then proceeded to a second trucking company after which he approached the third company, the Daily Delivery Service. While at the Daily Delivery Service truckyard, Officer Evans noticed a 1971 blue Chrysler automobile sticking out from between two trailers. He decided to block its path with his vehicle so that he could investigate the activities of the driver. As he pulled his vehicle across in front of the Chrysler, he saw the defendant emerging from a trailer with a large box in his hands. He ordered the defendant to stop but the defendant did not do so. The defendant dropped the box near the back door of the truck, got into his Chrysler automobile and tried to leave the area by backing around the tractor trailer. Officer Evans pulled his gun and shot the two left tires on the automobile, causing them to go

flat and causing the car to veer sharply and crash into and under one of the trailers. The defendant then attempted to flee on foot but the officer pursued him and, pointing his gun at the defendant, ordered him to stop. The defendant then stopped and surrendered to the officer. Officer Evans called for assistance and continued his investigation at the scene. In defendant's Chrysler automobile and in the area near the car and trailer, Evans, and other police assisting him, recovered five boxes containing merchandise, which the evidence revealed came from a trailer belonging to the Daily Delivery Service Company. A broken seal from the doors of the trailer was lying on the ground adjacent to the trailer.

## I

▮▮ Prior to trial defendant filed a motion to dismiss Count II, habitual offender, based upon the claim that the underlying felonies in the present charge were the same underlying felonies used in a prior habitual charge against defendant in which defendant was found not to be a habitual criminal by the jury trying that cause. He claims that he is subjected to double jeopardy. This same issue was decided against defendant recently in *Harris v. State*, (1981) Ind., 427 N.E.2d 658, and *Baker v. State*, (1981) Ind., 425 N.E.2d 98. In both *Harris* and *Baker*, this Court found that even though the underlying felonies used in the present case to enhance defendant's sentence had been used in a prior habitual charge, of which defendant was acquitted, double jeopardy does not bar the present habitual criminal finding since the habitual charge is not a prosecution, but rather, a sentence enhancement for the theft conviction in the case at bar. Justice Hunter wrote in *Baker*:

"Because the habitual offender statute does not create new or separate offenses and the habitual offender proceeding does not deal with the underlying facts on the substantive charge, the use of prior convictions at more than one habitual offender proceeding does not constitute double jeopardy .... There are no

constitutional or collateral estoppel barriers to prevent the state from exacting that punishment each time a different felony is committed as long as the prior convictions do still exist."

*Id.* 425 N.E.2d at 101.

There is no trial court error here.

## II

On the morning of trial and during *voir dire* of the jury, the defense indicated it had several matters it wished to discuss with the trial judge. The defendant discussed one matter himself in which he told the judge that he did not wish to have Mr. Lawrence represent him but preferred to represent himself. The defendant indicated he had written a letter to Judge Gifford, the regular Judge of the court, in which he had stated he was dissatisfied with the representation he was receiving from Mr. Lawrence and indicated he was filing charges with the Indiana Supreme Court Disciplinary Commission against Mr. Lawrence. He stated in the letter that, "If there is nothing that can be done without proper representation, I'd like to *again make a request for a new attorney* and ask that it be as quickly as possible." [emphasis in original] Nothing came of the charges filed by defendant against his attorney with the Disciplinary Commission. A different letter defendant wrote to Judge Gifford asking that he be allowed to represent himself, was not in the record but apparently it is not denied that such letter was sent to the judge. There was a short discussion by the judge, defendant, and his attorney, following which the judge told defendant that the jury was there and they were ready to go to trial, that the judge was satisfied that the defendant would receive a fair trial by the jury and he was not, at that time, going to permit the defendant to represent himself. Appellant now claims that the trial court erred pursuant to the holding of the United States Supreme Court in *Faretta v. California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. The issue presented here was decided by this Court in *Russell v. State*, (1978) Ind., 383 N.E.2d 309, when a similar

motion was made by defendant on the morning of trial. In *Russell* this Court held that a decision to proceed *pro se* is relinquishment of Sixth Amendment right to counsel. We held that a hearing on the question of defendant's self-representation need be had only if such right is properly asserted by clear and unequivocal request within a reasonable time prior to the first day of trial. We further held that requests on the morning of trial are *per se* untimely:

"It is one thing to recognize that this right exists as a matter of the defendant's considered will and intelligent choice, as discussed in *Faretta*; it is another thing to take an absolutist view of the personal autonomy interest which would enshroud last minute whim and caprice as a constitutional guarantee."

*Id.* 383 N.E.2d at 314.

The trial court did not err in refusing defendant's demand.

## III

On Count I, charging defendant with theft, the jury returned a verdict of guilty. The jury foreman also signed and returned into open court, the verdict forms for the included offenses of guilty of trespass and guilty of conversion. The court invited the parties to poll the jurors but both the State and the defendant declined to do so. The trial then proceeded with the habitual criminal portion of the trial. After the State had rested on this count, a discussion was held between the court and counsel concerning the return of the jury's verdicts on Count I. Defendant moved for a mistrial on the grounds that the return of the verdicts in Count I were inconsistent since the jury had returned a verdict of guilty of the crime of theft as well as the included offenses. The court chose to treat the signed verdict forms of trespass and conversion as surplusage and denied the motion for mistrial.

Defendant's contention that the return of verdict forms finding the defendant guilty of theft and of the included offenses, thereby impeaching the jury's verdict of theft, is without merit. It can as well be presumed

that the jury felt that since the defendant was guilty of theft he was also guilty of the included offenses named in the other verdicts. The proper procedure would have been to object to the return of the verdicts at the time the jury returned them and have the jury correct the verdicts at that time. The court properly found the return of the verdicts on the included offenses to be surplusage, however, and there was no requirement to order a mistrial. *Compare Hogan v. State*, (1980) Ind., 409 N.E.2d 588; *Grimm v. State*, (1980) Ind., 401 N.E.2d 686, 687.

## IV

■ It is defendant's contention that the court erred by refusing to inform the jury of the penalty for a finding of habitual criminal. This issue has already been decided adversely to defendant on several occasions by this Court. *Harrington v. State*, (1981) Ind., 421 N.E.2d 1113; *Bailey v. State*, (1980) Ind., 412 N.E.2d 56.

## V

■ On the morning of trial it was discovered that a judge *pro tempore*, rather than the regular judge would try defendant's cause. The only objection made to this was that by the defendant himself by stating to the judge: "Well, I would object to that too." No grounds were given for the objection and no further motions were made regarding the judge *pro tempore*. Defendant does not now point out how he was prejudiced by the trial of this cause by this particular judge. A similar situation was faced by this Court in *Bryant v. State*, (1971) 256 Ind. 587, 271 N.E.2d 127, wherein the defendant learned on the day of trial that a judge *pro tempore* was set in his case. He requested a continuance which was denied. This Court held that the denial of the continuance was proper since no reason was given for the continuance other than that defendant desired to be tried by the regular judge rather than a pro tempore. *See also Roberts v. State*, (1978) 268 Ind. 127, 373 N.E.2d 1103. There was no error in the court's overruling of defendant's objection on this issue.

## VI

■ One of the underlying crimes used in defendant's habitual criminal proceeding was a 1976 conviction for theft. Defendant's contention is that such a conviction, if considered under the present law, would constitute a misdemeanor and thus should not be used as an underlying crime for the habitual proceeding. In *Wise v. State*, (1980) Ind., 400 N.E.2d 114, the defendant also had a prior theft conviction in 1976, the same charge as the defendant had here, and was fined only $1,000. This Court held:

> "We do not agree with defendant's argument. The court presiding at defendant's trial did not and could not 'enter judgment of a class A misdemeanor and sentence accordingly.' Ind.Code § 35–50–2–7(b) (Burns 1979 Repl.). There was no such designated crime as a class A misdemeanor in 1976. We find that defendant's prior theft conviction was a 'felony conviction' as defined in Ind.Code § 35–50–2–1 (Burns 1979 Repl.)."

*Id.* 400 N.E.2d at 118.

■ As *Wise, supra*, provided, a conviction can be used in an habitual criminal proceeding if the prior unrelated crime for which defendant is credited was a felony at the time the conviction and sentence were imposed. This would be true if the range of penalty under the statute at that time provided for penalties in excess of a year and less than a year and the penalty actually imposed was less than a year imprisonment.

## VII

■ Defendant further contends that the trial court erred in giving final instruction 15(A) concerning flight. However, defendant has not set out in his brief the complained of instruction nor has he set out the verbatim objection thereto. The alleged error is therefore waived and we will not consider it. Ind.R.App.P. 8.3(a)(7); *Patterson v. State*, (1978) 267 Ind. 515, 371 N.E.2d 1309. We do note however that Officer Evans' testimony showed that de-

fendant attempted to flee the scene of the crime and avoid arrest. He first attempted to flee in his automobile. After Officer Evans shot two tires on the automobile, defendant then attempted to flee on foot. This was sufficient evidence to justify the giving of the instruction on flight. *Dunville v. State*, (1979) Ind., 393 N.E.2d 143; *Thomas v. State*, (1970) 254 Ind. 561, 261 N.E.2d 224.

### VIII

Defendant claims the trial court erred in overruling his objection to the admission of State's Exhibit No. 5, since this item was seized during a warrantless search of his vehicle. State's Exhibit 5 was a box of merchandise similar to the others recovered by the police inside defendant's automobile and on the ground near the automobile and the back door of the trailer. These other boxes of merchandise were in plain view of the police in approaching the scene and the vehicle, and were admitted into evidence as State's Exhibits 6, 7, 8 and 9.

Officer Evans stated that the vehicle was taken into custody after defendant's arrest and an inventory search was made of the impounded vehicle. Exhibit 5 was discovered during the course of that inventory. There is no question that the police had the right to take custody of the vehicle. It was on the property of another and had been wrecked, involving one of the trailers on that property. *Compare Cady v. Dombrowski*, (1973) 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706. Since the vehicle was lawfully impounded, the police were justified in conducting an inventory search of the vehicle and no warrant was required for this purpose. *South Dakota v. Opperman*, (1976) 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *compare Dearing v. State*, (1979) Ind., 393 N.E.2d 167.

In addition, the admission of Exhibit 5 could be no more than harmless error at most. Exhibits 6, 7, 8, and 9, were admitted into evidence and Exhibit 5 was nothing more than cumulative in relation to them. In view of the facts surrounding the apprehension of the defendant at the scene, it cannot be said the admission of Exhibit 5 was so prejudicial under any circumstances that its admission was reversible error.

### IX

On November 28, 1979, defendant requested an early trial under Ind.R.Crim.P. 4(B). With the consent of both parties, trial was set for January 21, 1980. On January 21, 1980, defendant moved for a continuance. The motion for continuance was signed by both defendant and his counsel. Trial was then reset on January 22, 1980, for the date of June 23, 1980. There was no further request for an early trial setting by defendant. The record then shows that on June 12, 1980, defendant filed a *pro se* motion for discharge under Ind.R.Crim.P. 4. This motion was denied. It appears that the reason for the continuance requested by the defendant on January 21, 1980, was for the purpose of filing a writ of mandate by the defendant in the Supreme Court of Indiana and further due to proceedings pending before the Disciplinary Commission. The continuance requested by defendant was, therefore, for an indefinite time. That was the reason the trial was set for June 23, 1980, rather than an earlier date. Defendant is, therefore, chargeable with the delay caused by his request for an indefinite continuance and, in effect, withdrawing his request for an early trial. *Brown v. State*, (1981) Ind., 417 N.E.2d 333, 336. As we held in *Parks v. State*, (1979) Ind., 389 N.E.2d 286, at 289:

"We have clearly held that when a motion for a speedy trial has been made under Ind.R.Cr.P. 4(B) and the trial court has acted on that motion by setting a trial date, the motion will be deemed to have served its purpose. The defendant must then file a second motion for immediate trial to invoke his right under the rule when the trial is continued due to his action."

There was no error in denying Defendant's motion for discharge.

### X

Defendant claims there was a failure of sufficiency of the evidence since

the State did not sufficiently establish ownership of the alleged stolen property nor did the State establish that the defendant committed unauthorized possession and control over the property. When reviewing the sufficiency of the evidence this Court will not weigh the evidence or determine the credibility of witnesses. Rather, we will consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. The verdict will be upheld so long as there is sufficient evidence of probative value from which the jury could find the defendant guilty beyond a reasonable doubt. *Willard v. State*, (1980) Ind., 400 N.E.2d 151, 160; *Love v. State*, (1979) Ind., 393 N.E.2d 178, 180; *Chambers v. State*, (1979) Ind., 392 N.E.2d 1156, 1161.

As we have already indicated above, Officer Evans observed defendant removing one of the boxes of merchandise from the Daily Delivery Service trailer. The defendant attempted to flee the scene but was apprehended by the police officer. A representative of Daily Delivery Service, Cody Sparks, testified that the boxes of merchandise represented by State's Exhibits 5 through 9, inclusive, were consigned from the K-Mart Harrell Corporation, North Bergen, New Jersey, and were to be delivered to K–Mart stores in Indiana. He testified that these boxes were in the trailer from which Officer Evans saw defendant departing with a box, and that the doors of the trailer had previously been closed and sealed.

Defendant's contention seems to be based on the witness' testimony that he was able to testify to these facts "just from my knowledge of our operation and of knowledge of the paper work that I went over the following Monday morning." Defendant contends that the witness' testimony in this regard was equivocal and, therefore, not probative. The witness further testified on cross-examination, however, that each box carries a designated number and each trailer has a designated number within the company. He stated each of the boxes is manifested on a bill of lading destined to a certain store and that each of the boxes is then manifested on a particular trailer. The store to which they are to be delivered is manifested on a trailer number. The records would then show that these boxes came from this trailer, destined for delivery to a particular store on the following Monday morning. He stated, as a matter of fact, that the Company paid a claim to the K-Mart Corporation for the contents of each of the boxes in question. Cody Sparks also testified that neither defendant Robert Lee Dixon nor anyone else was given permission to come onto that lot on Memorial Day Sunday and remove any of the boxes of merchandise from that trailer. There was, therefore, sufficient evidence from which the jury could reasonably infer and find beyond a reasonable doubt that the defendant committed the crime of theft. *Bryant v. State*, (1969) 252 Ind. 17, 245 N.E.2d 156; *Willoughby v. State*, (1969) 252 Ind. 13, 245 N.E.2d 167.

## XI

Finally, defendant claims he had inadequate and incompetent representation of counsel. He claims trial counsel failed to consult with him at any time prior to trial. This fact is in conflict as trial counsel stated to the trial judge that he did, in fact, confer with the defendant prior to trial. In a brief discussion before trial, when defendant, *pro se*, raised many issues with the court, he told the trial judge that Mr. Lawrence had never counseled with him. The trial judge asked Mr. Lawrence if this was true and Mr. Lawrence stated that it was not true. Mr. Lawrence told the court that the defendant had given him the names of seven witnesses that the defendant wanted called in his behalf and indicated that all seven of them had been subpoenaed. He then stated, "I have talked personally to three or four. There are two that I have not talked to and I trust they are in the court room and I will do so prior to testimony." The record shows that counsel did call several witnesses in defendant's behalf and brought forward the testimony they had to offer. The gist of the testimo-

ny of most of these witnesses seemed to be that they were with defendant on occasions when Officer Evans and other police officers threatened and harassed defendant, although they had no grounds to do so. The defendant himself testified and gave a rather rambling account of incidents in which he was approached by police, arrested and summoned into court, apparently intending to infer that he was being harassed and wrongfully charged by police in an attempt to "get him." Examination and cross-examination, however, tended to show that defendant had been arrested on many occasions, failed to appear when he was ordered to, and had to be re-arrested to be tried. Some of these warrants, arrests, and trials were for traffic violations and some were for more serious crimes. It further appears defendant was convicted of some of these matters. There is no showing or documentation other than defendant's own word, that defendant was wrongfully apprehended or arrested on any charges. There is no claim here that defendant's counsel failed to call any witnesses that would have testified in defendant's behalf in any beneficial manner, or of any particular conduct of counsel that was prejudicial to defendant's defense. In examining the transcript of the trial, it appears that defendant's counsel was well advised and knowledgeable of the issues and of the testimony brought forth by the witnesses and the exhibits. All of the State's witnesses were extensively cross-examined and the defenses defendant had to offer were presented. Competency of counsel, of course, revolves around the particular facts of each case. There is a presumption on appeal that counsel was competent and the presumption is overcome only by strong and convincing evidence. Such evidence must establish counsel so failed to provide the defendant with adequate legal representation that the trial resulted in a "mockery of justice." *Blackburn v. State*, (1973) 260 Ind. 5, 22, 291 N.E.2d 686, 696. Examination of all the facts and circumstances of this trial does not indicate this. *Baker v. State*, (1980) Ind., 403 N.E.2d 1069; *Hollon v. State*, (1980) Ind., 398 N.E.2d 1273.

The trial court is affirmed.

GIVAN, C. J., and DeBRULER, J., concur.

HUNTER, J., dissents with separate opinion.

PRENTICE, J., dissents with separate opinion in which HUNTER, J., concurs in part.

PRENTICE, Justice, dissenting.

I dissent to Issues I and II.

### I.

I continue to believe that in habitual offender proceedings the State is bound by the same rules of collateral estoppel and double jeopardy which apply to the proceeding upon the main felony charge(s). *Harris v. State*, (1981) Ind., 427 N.E.2d 658, 663 (Prentice, J., dissenting); *Baker v. State*, (1981) Ind., 425 N.E.2d 98, 103 (Prentice, J., dissenting). *Harris* and *Baker* appear to have settled the issue under Indiana law, but with respect to the United States Constitution, the defendant may yet prevail. Recently the United States Supreme Court granted certiorari to review *Estelle v. Bullard*, (5th Cir. 1982) 665 F.2d 1347, *cert. granted*, (1982) —— U.S. ——, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982), which presents the issue in the context of a habeas corpus proceeding that arose from an application of Texas' recidivist statute.

Defendant's motion to dismiss the habitual offender charge should have been granted; however, for the reasons stated below, the case should be reversed in its entirety and remanded for a new trial.

### II.

On June 23, 1980, just prior to trial, the trial court, Defendant, and defense counsel, Mr. Lawrence, engaged in a discussion with respect to whether or not Defendant would represent himself at trial. Defendant, who spent pre-trial time in jail, repeatedly asserted that Mr. Lawrence had not spoken to him about the case. Mr. Lawrence told the

trial court that he had subpoenaed seven witnesses whose names had been furnished by Defendant and had spoken with three or four of the witnesses and that he intended to confer with two more of them before they testified. The trial court ruled as follows:

"THE COURT: Well, we are not going to get into an argument. I have overruled your motion. Mr. Lawrence is your attorney and you are going to abide by that."

The June 23, 1980 pre-trial discussion was the last in a series of events in which Defendant had asserted to the trial court that he was dissatisfied with Mr. Lawrence's representation. On October 9, 1979 Defendant filed a letter with the trial court, which contains the following:

"If it's not my attorney who sees to it that my rights are not violated then to whom do I go, to see to it that my rights are not violated any further. It has been obvious to me from the start that Mr. Lawrence, is not serving my best interest or for this fact, no one who he seems to be representing in the Marion County Jail. I am now filing charges with the Indiana Supreme Court Disciplinary Commission, in hopes to remedy some of us from his neglect.

"If there is nothing that can be done without proper representation, I'd like to *again make a request for a new attorney* and ask that be as quickly as possible." (Emphasis in original).

Nothing came of the charges that Defendant filed with the Disciplinary Commission; however, the record is unequivocal that Defendant did not want Mr. Lawrence to represent him in this matter. In *Faretta v. California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 the United States Supreme Court ruled that a State may not force a lawyer upon a criminal defendant who wishes to conduct his own defense. The majority acknowledges *Faretta* but, without concern for the record, blindly follows *Russell v. State*, (1978) Ind., 383 N.E.2d 309, where we stated:

"Upon consideration of the various aforementioned interests involved in these *Faretta* procedural problems, we conclude that the right of self-representation must be asserted within a reasonable time prior to the day on which the trial begins. Morning of trial requests are thus per se untimely. None of the interests involved here, the right of self-representation, the right to counsel, or the interest in preserving an orderly criminal process, are furthered by the allowance of a last minute request such as was made in the present case. On the other hand, experience has shown that day of trial assertions of the self-representation right are likely to lead to a rushed procedure, increasing the chances that the case should be reversed because some vital interest of the defendant was not adequately protected. (citation omitted). We do not think that the requirement of a pre-trial assertion is in derogation of the Sixth Amendment right of self-representation. It is one thing to recognize that this right exists as a matter of the defendant's considered will and intelligent choice, as discussed in *Faretta*; it is another thing to take an absolutist view of the personal autonomy interest which would enshroud last minute whim and caprice as a constitutional guarantee." *Id.* at 314.

In light of the record in this case, I have reconsidered this issue, and I now believe that the dissents of Justice DeBruler and Justice Hunter in *Russell* express the correct position.

In *Russell* the Court expressed concern that morning of trial assertions of the right of self-representation would cause delay. Justice Hunter aptly observed, however, that the hearing to determine if the defendant understands the consequences of his request to represent himself would not pose a serious inconvenience. The record clearly reflects that Defendant had, prior to trial reached the decision that Mr. Lawrence should not represent him. Giving effect to Defendant's constitutional right of self representation does not "enshroud last minute whim and caprice as a constitutional guar-

antee." *See Russell v. State, supra.* It is the "right to choose" and not the "right to choose rationally" that is protected. It may, therefore, be exercised on whim and caprice, if such be the defendant's will, for the court's only obligation is to assure that it is exercised knowingly and voluntarily.

Additionally, on the morning of trial the trial court entertained challenges to the habitual offender count and a motion to strike the jury panel, in addition to Defendant's request to represent himself. As this record demonstrates, the potential for delay on the morning of trial exists in areas wholly unrelated to the assertion of the right of self-representation. We need not list every single motion which would be the source of a delay but which, nevertheless might be timely, even if filed on the morning of trial.

We also note that the record contains no hint that had Defendant been allowed to represent himself, he would have promptly moved for a continuance. We have no doubt that a defendant may not employ such gamesmanship so as to delay his trial and to inconvenience the court, the State, the jurors, and the witnesses. *See German v. State,* (1978) 268 Ind. 67, 70–71, 373 N.E.2d 880, 882.

Lastly, as Justice DeBruler cogently recognized in his dissent in *Russell,* the right of self-representation is of constitutional magnitude. Defendant's election to represent himself may have been both foolhardy and ill advised as the trial court apparently found.

"THE DEFENDANT: I'm not trying to make a comparison between myself and Mr. Lawrence. I'm trying to think more of what would be to the best for defending me.

"THE COURT: Well, I recommend you let Mr. Lawrence make those decisions as to what is best for defending yourself.

"THE DEFENDANT: Doesn't a defendant have a right to defend himself—to represent himself?

"THE COURT: A defendant has a right to represent himself within certain bounds and that being I'd rely on the expertise of counsel who had gone through law school and passed the bar examination and been admitted to practice in this state. He is in much better shape to defend your rights and yourself than you yourself sir without the educational background and experience in the trial court itself."

The trial court, in effect, denied the defendant a hearing and summarily denied his request to proceed without counsel. It was only necessary for him to advise Defendant of the risks inherent in waiving his right to counsel and to ascertain if he understood such advisements and was competent to proceed. A defendant who is competent to stand trial with the assistance of counsel is competent to waive his right to counsel. Under *Faretta* the right to represent oneself belongs to the defendant; not to the trial court. Defendant requested that he be allowed to represent himself at trial, and the trial court's denial thereof, while unquestionably well intended and probably in Defendant's best interest, was error, which requires a new trial.

The judgment of the trial court should be reversed, and the case remanded for a new trial, without counsel or with hybrid counsel as the trial court should determine. *See Duncan v. State,* (1980) Ind., 412 N.E.2d 770, 772–73; *Swinehart v. State,* (1978) 268 Ind. 460, 465–66, 376 N.E.2d 486, 490.

HUNTER, J., concurs in part.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. For the reasons enunciated in Justice Prentice's dissenting opinion, as well as the dissenting opinions in *Russell v. State,* (1978) Ind., 383 N.E.2d 309, the trial court erred in failing to hold a hearing on defendant's request to represent himself at trial. The judgment of the trial court should be reversed and the cause remanded for a new trial, where subsequent to a hearing, the trial court would determine whether defendant's request should be granted in whole or part. *See also, German v. State,* (1978) 268 Ind. 67, 373 N.E.2d 880.

I do not join, however, Justice Prentice's approach to issue I; the majority correctly relied on *Harris v. State*, (1981) Ind., 427 N.E.2d 658, and *Baker v. State*, (1981) Ind., 425 N.E.2d 98, in its disposition of that issue. Likewise, I would join the majority's disposition of the remaining issues to the extent that a reversal would not preempt the need to address those claims of error.

I dissent.