**Earl NATION, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 283S66.

Supreme Court of Indiana.

Feb. 22, 1983.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with Count I, Promoting Prostitution, Ind.Code § 35–45–4–4(1) (Burns 1979), Count II, Promoting Prostitution, Ind.Code § 35–45–4–4(4) (Burns 1979), Count III, Contributing

to the Delinquency of a Minor, Ind.Code § 35–46–1–8 (Burns 1979), and Count IV, Intimidation, Ind.Code § 35–45–2–1 (Burns 1979). After a bench trial, Defendant was convicted of Counts I and II, acquitted of Counts III and IV, and sentenced to six (6) years imprisonment, four (4) years of which were suspended, upon Count I and two (2) years imprisonment upon Count II, sentences to run concurrently.

The cause is before us upon the State's (Appellee's) Petition to Transfer. Said Petition is now granted pursuant to Ind.R. App.P. 11(B)(2)(b) in that the decisions and opinions of the Court of Appeals erroneously decided a new question of law, i.e., that a knowing and voluntary waiver of the right to counsel, by a defendant who expresses a desire to discharge his retained counsel and to proceed to trial *pro se,* may not be found, absent a record that discloses direct evidence that he was advised, in clear and unambiguous language, that he has a right to counsel and that the exercise of his right to proceed *pro se* constitutes a waiver of that right to counsel.

The appeal assigns four issues, as hereinafter set forth. The Court of Appeals, however, did not address those issues but, instead, focused, sua sponte, upon the trial court's failure to have advised the defendant, specifically, of his right to counsel prior to allowing him to go to trial *pro se.* Upon rehearing, it announced a prophylactic rule, substantially as hereinbefore related, and held that under such rule it could not be found that the defendant had clearly and unequivocally exercised his right to proceed *pro se.*

The Court of Appeals has fashioned a proposed rule of law to apply in all cases where the right to counsel has been waived, which is implicit in electing to represent one's self, as therapeutic as our rule and statute relating to waivers required to authorize the acceptance of a guilty plea. ▮ We have (by split decisions) ordered several guilty pleas vacated because the record of advisements did not comport to the requirements of the aforementioned rule and statute, notwithstanding that the record, as a whole and in context, left little, if any, doubt that the accused understood all of his rights. As stated by the Court of Appeals, the rule is "easily understood, easily applied and easily enforced. It curtails a frequently used and misused claim of error. Thus its justification is to avoid having to probe ambiguity and imposing upon the time and resources of the courts." 438 N.E.2d 1003 at 1005. Unquestionably, one proposing to proceed *pro se* is entering upon a hazardous adventure and should be fully advised and forewarned; but we do not perceive the need to extend the application of "guilty plea advisements" rules to *pro se* trials. Guilty pleas are, in and of themselves, convictions. The same is not true of self representation, regardless of how ill advised it may be.

▮ The record reveals that Defendant did have counsel whom he had retained but that he was dissatisfied with him because he could not obtain from him the assurances that he desired. Since he had counsel, he must have known that counsel was available to him; and if he knew he could have counsel, it is immaterial whether he understood that it was his right rather than a mere privilege. The court urged him to have representation, and he declined.

Having representation, Defendant was not entitled to a continuance to enable him to obtain new counsel, and having funds, he was not entitled to the services of pauper counsel. The defendant had the option of proceeding with his previously chosen counsel, for a fee, or of proceeding *pro se.* He opted for the latter, notwithstanding the court's attempt to dissuade him. There is no reason to believe that advisements, by the judge, that he had a constitutional right to counsel could have altered his decision or the course of the proceedings.

The appeal assigns four errors:

(1) The trial court abused its discretion in permitting defense counsel to withdraw on the morning of trial and in permitting Defendant to proceed *pro se.*

(2) Defendant did not knowingly and intelligently waive his right to counsel.

(3) The evidence was insufficient to support the verdict as to count one (1), and the verdict upon that count was contrary to law under the doctrine of collateral estoppel.

(4) The verdict upon count two (2) was contrary to law under the doctrine of collateral estoppel.

On the day trial commenced, defense counsel brought a problem to the trial court's attention:

"MR. CONNOR: As I mentioned earlier today, Mr. Nation has refused to pay me the balance of my fee, although he has the money, or at least told me that he has the money. And, has asked that I withdraw so that he can proceed Pro Se."

The trial court was understandably reluctant to allow Defendant to proceed *pro se* and after questioning defense counsel, asked the Defendant about his position:

"MR. NATION: Yes, sir. I feel as though to pay the man for a job that he said he doesn't feel as though he could help me on much. And, just like he said, I refuse to pay him. And, I told him that I can go .. come up here and go to jail myself. I don't need to pay him. I'm not pleading guilty to nothing. I don't feel as though I'm guilty of anything. And, it's just like, I've been in construction all my life. And, if I tell a man that I can't do the job, he's not going to pay me to do it."

During the colloquy which ensued, the trial court attempted to dissuade Defendant from representing himself. He noted defense counsel's reputation and experience, of which Defendant was aware. Defendant was nevertheless adamant:

"THE COURT: But you seriously believe that you would rather proceed Pro Se? That you would rather represent yourself?

"MR. NATION: The man told me that he didn't honestly think that he could help me out. And, therefore, I don't feel as though I should pay him. Therefore, I don't feel as though he should represent me."

The Court then asked Defendant if he understood the jeopardy involved in representing oneself, the need to learn technical rules of evidence and how to make objections, and that a lawyer's duty is not to insure a not guilty verdict but rather a fair trial. Defendant responded and the following occurred:

"MR. NATION: I'm aware of that, but when they tell you that they don't think that they can help you. That they figure you are going to jail anyway, then why pay them to defend you?

"MR. CONNOR: May I interrupt?

"THE COURT: Just a minute. Go ahead, Mr. Connor.

"MR. CONNOR: I would like to state for the record that I did not tell the gentleman that. This morning, when I asked him for the balance of my fee, he said 'Can you guarantee anything?' That's when the problems started. When I told him that I couldn't. I just wanted that for the record.

"THE COURT: He asked you for a guarantee, and under the Canons of Ethics, you refused to give it to him.

"MR. CONNOR: Yes, sir. That's correct."

The trial court then released counsel from his obligation to defend Defendant and asked him to remain in court in a "stand by" capacity. Defendant then agreed to try the case:

"THE COURT: And, we will proceed to try this. Is that your wish, Mr. Nation?

"MR. NATION: Yes, it is.

## ISSUE I

Defendant first contends that the trial court abused its discretion in allowing defense counsel to withdraw and, thereby, allowing him to proceed *pro se*. He reasons that his "half hearted expressions of dissatisfaction" with his attorney were not the clear and unequivocal assertion of the right to represent himself required by *Russell v. State,* (1978) 270 Ind. 55, 61, 383 N.E.2d 309, 313 and *Anderson v. State,* (1977) 267 Ind. 289, 294, 370 N.E.2d 318, 320, *cert. denied,* (1978) 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786. Consequently, he asserts that

the trial court erred in permitting him to represent himself as no demand or request to be so permitted had been made.

Defendant's reliance upon *Russell* is misplaced. In that case and other such cases, eg., *Dixon v. State,* (1982) Ind., 437 N.E.2d 1318, 1321, we considered claims that a trial court had erroneously forced an accused to trial with counsel although he wished to defend himself. We determined that systemic considerations favored requiring that the right to self representation bȩ timely asserted and that a motion made on the morning of the trial came too late.

■ Neither *Russell* nor *Dixon* treated the situation at bar. Here, rather than forcing a lawyer upon an accused, the trial court, on the morning of trial, relieved the accused of his lawyer, and permitted him to proceed *pro se,* in accord with his request and our decisions in *German v. State,* (1978) 268 Ind. 67, 373 N.E.2d 880, and *Duncan v. State,* (1980) Ind., 412 N.E.2d 770, 773. *German* discharged his attorney after the jury had been impanelled. After questioning him about his qualifications to defend himself, the trial court required him to elect between proceeding *pro se* or with his attorney of record. He chose to proceed *pro se,* and we found no merit in his contention that the trial court had erroneously compelled him to represent himself. Similarly, *Duncan,* on the morning of trial, sought to obtain a new court appointed attorney and stated that in no event did he want to be represented by his counsel of record. We again upheld the conviction over a claim that the court had forced him to represent himself. Under *German* and *Duncan,* a trial court faced with an accused, who attempts to relieve himself of his attorney on the morning of trial, may, in its discretion, require such accused to proceed to trial with his attorney or *pro se.* Nothing in *Russell v. State, supra,* or *Dixon v. State, supra,* is to the contrary.

■ In the case at bar, Defendant unequivocally fired his attorney on the morning of trial. The record reveals that when he was, thereafter, interrogated by the court regarding such dismissal, Defendant comprehended the perilous task of defending himself and apparently thought, correctly or not, that his case was not strong. For that reason, when the court stated that the case would be tried that day, Defendant elected to proceed *pro se* in order to save the attorney's fees he would, otherwise, be required to pay. The trial court did not compel Defendant to represent himself and did not err in allowing counsel to withdraw.

## ISSUE II

■ Defendant also contends that he did not knowingly and intelligently waive his right to counsel. Again, Defendant relies upon *Russell v. State, supra,* and in so doing ignores the applicability of *German v. State, supra,* and *Duncan v. State, supra.* Moreover, the record discloses that Defendant, after being well apprised of the dangers inherent in such undertaking, understood the choices available to him and elected to proceed *pro se.*

## ISSUES III & IV

■ Under an additional heading in his Brief, Defendant challenges the sufficiency of the evidence and the propriety of the trial court's judgment, as a matter of law.

He first contends that the evidence is insufficient upon Count I, Promoting Prostitution, Ind.Code § 35–45–4–4(1):

> "A person who: (1) Knowingly and intentionally entices or compels another person to become a prostitute; commits promoting prostitution, * * *."

Upon questioning by the trial court, the victim admitted that she had engaged in prostitution before she ever met Defendant. Therefore, Defendant reasons that he could not have enticed or compelled her to become a prostitute, as charged in the information, inasmuch as she was already a prostitute.

The interpretation of the phrase "to become a prostitute" proffered by Defendant is not the one intended by the drafters of the statute:

> "The term 'to become a prostitute' in this clause, relates back to the crime of prosti-

tution (Ind.Code 35–45–4–2 (Burns 1979)) which states that a person who knowingly performs, or offers or agrees to perform an act of sexual intercourse or deviate sexual conduct for money or other things of value is a prostitute." Indiana Criminal Law Commission Comments to Ind.Code 35–45–4–4(1) (West 1978).

Under this interpretation, the State need only show that the accused enticed or compelled the victim to commit an act of prostitution. It need not prove that Defendant induced her to embark upon a career of prostitution.

■ The evidence most favorable to the State reveals that the victim went to work for Defendant as a prostitute at his suggestion, offer, and encouragement. Before she entered into the arrangement, she engaged in sexual intercourse with Defendant and another man in order "* * * to show them what I could do." Defendant also purchased make-up and some clothing for her and had agreed to furnish lodging before he took her to a bordello operated by a woman named Burns. The victim serviced clients at this location, which Defendant visited in order to collect a portion of her earnings. The victim added that Defendant threatened to break down the door of an apartment where she had sought refuge the first time that she ran away from him. Much of the victim's testimony was corroborated by a witness who had introduced her to Defendant. The above related evidence is adequate to sustain the conviction for Promoting Prostitution upon Count I of the information.

■ Defendant lastly raises a claimed violation of the doctrine of collateral estoppel. In this case there has been only one lawsuit, one trial, and one judgment; therefore, obviously the doctrine does not apply. See Ashe v. Swenson, (1970) 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475; Town of Flora v. Indiana Service Corp.,

(1944) 222 Ind. 253, 256–57, 53 N.E.2d 161, 163. Defendant's assignment of error actually complains of an asserted inconsistency in the trial court's judgment.[1] Defendant was charged with enticing or compelling one J.D. to become a prostitute on July 23, 1979, Count I, receiving money from a prostitute, J.D., on July 24, 1979, Count II, and causing a minor, J.D., to commit an act of delinquency, prostitution, on July 23, 1979, Count III. Defendant argues that his acquittal upon Count III compels an acquittal upon Counts I and II because "* * * it was factually and legally impossible to find him guilty of enticing or compelling (the victim) to become a prostitute on or about July 23, 1979, under Count One (1), and at the same time find him not guilty of inducing her to commit an act of prostitution on or about July 23, 1979, under Count Three (3)." He makes the same argument with respect to Count II.

The argument is without merit. In this State, verdicts rendered upon multiple counts of a single information need not be consistent. Hicks v. State, (1981) Ind., 426 N.E.2d 411, 414. Additionally, in a criminal case, the judge need not make findings of fact or conclusions of law to explain the mental processes he engaged in as the trier of fact. Neeley v. State, (1974) 261 Ind. 434, 305 N.E.2d 434. Assuming that the evidence which sustains the charges upon Counts I and II, also sustains the charge of Count III, the trial court was, nevertheless, not obligated to convict Defendant upon Count III. He cannot complain of an acquittal to which he was not entitled.

The petition to transfer is granted, the judgment and opinions of the Court of Appeals are vacated, and the judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with opinion.

1. Defendant has understandably confused collateral estoppel and inconsistent verdicts based upon our comments in Hutcherson v. State, (1978) 269 Ind. 331, 337, 380 N.E.2d 1219, 1222, a case upon which he relies. To the extent that

Hutcherson may be misunderstood to imply that collateral estoppel may apply where there has been no prior and separate criminal prosecution, it must be disapproved.

DeBRULER, Justice, dissenting.

Upon study, I find myself in accord with the thinking of the majority of the Second District, in its opinion on petition for rehearing to be found at 438 N.E.2d 1005. The accused in a criminal case who refuses to pay his lawyer's fee and fires him on the morning of trial and expresses a desire to act as his own lawyer, because the lawyer has not been able to negotiate a plea agreement satisfactory to him, may be taking these steps in ignorance of the existence of his "right" to counsel and of its total content. When, as suggested by the opinion of the court below, the trial court is confronted by a defendant who affirmatively seeks to exercise the right to proceed pro se, the law should impose a mandatory duty upon the trial court to advise the defendant in clear and unambiguous language, "(1) of his right to counsel, (2) the exercise of his right to proceed pro se constitutes a waiver of that right, and (3) of the disadvantages of self-representation." Rules requiring this kind of specificity and focus provide a more secure protection for the fundamental right to counsel, and at the same time should be welcomed by trial judges who simply want to do what is right in every case and get on with it.