## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 14 2017, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth M. Jordan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 14, 2017 <br><br> Court of Appeals Cause No. 44A03-1603-CR-503 <br><br> Appeal from the Lagrange Superior Court <br><br> The Honorable Lisa M. Bowen-Slaven, Judge <br><br> Trial Court Cause No. 44D01-1408-F4-12 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Kenneth Jordan (Jordan), appeals his conviction for Count I, dealing in methamphetamine, a Level 4 felony, I.C. § 35-48-4-1.1(a) (2014); Count II, possession of methamphetamine, a Level 5 felony, I.C. § 35-48-4-6.1(b)(2) (2014); Count III, possession of precursors, a Level 6 felony, I.C. § 35-48-4-14.5(e) (2014); Count IV, maintaining common nuisance, a Level 6 felony, I.C. § 35-48-4-13(b)(1) (2014); and Count V, possession of paraphernalia, Class A misdemeanor, I.C. § 35-48-4-8.3(a)(1) (2014).

We affirm.

# ISSUES

Jordan raises four issues on appeal, which we restate as the following five issues:

(1) Whether the trial court abused its discretion in admitting some of the State's exhibits;

(2) Whether the search conducted at Jordan's home violated Jordan's rights under Article 1, Section 11 of the Indiana Constitution;

(3) Whether the trial court abused its discretion in admitting Jordan's statements regarding the existence of a methamphetamine lab absent *Miranda* warnings;

(4) Whether there was sufficient evidence to support Jordan's conviction; and

(5) Whether Jordan's conviction for dealing in methamphetamine, possession

of methamphetamine, and possession of precursors violated the prohibition against double jeopardy under the Indiana Constitution.

# FACTS AND PROCEDURAL HISTORY

[4] On August 7, 2014, the Noble County Probation Department decided to conduct a routine probation search of Jordan's home because Jordan had failed a drug test and had missed several appointments with his probation officer, John Wheeler (Wheeler). During that time in question, Jordan was on probation for possession of marijuana and possession of paraphernalia through the Noble Superior Court. According to Wheeler, Jordan had provided the probation department with his parents' address as his place of abode; however, when Wheeler and another probation officer, Samantha Hammond (Hammond), arrived at Jordan's parents' home, Jordan was not present. Jordan's parents allowed the probation officers to search the house, but there was nothing suspicious there. Officer Tyler Randol (Officer Randol) and Officer Nate Sprunger (Officer Sprunger) of the Noble County Police Department, who were assisting with the probation search, were radioed Jordan's correct address—8375 East 800 South, LaGrange County, Indiana. The officers communicated Jordan's new location with Wheeler and Hammond.

[5] Officer Randol and Officer Sprunger were first to arrive at Jordan's residence, where they encountered Aleshia Messer (Messer) standing in the driveway. According to Messer, she "was there to get a bag of clothes that were at

[Jordan's]." (Transcript p. 87). Messer indicated that earlier that day, around the garage area, she had observed Jordan shaking a "pop bottle." (Tr. p. 88). At the officers' request, Messer knocked on Jordan's front door and requested Jordan to step outside of his house. Jordan did not come out right away, and when he did exit, he appeared nervous and spoke fast. The officers explained that they were there assist to Wheeler and Hammond with their probation search.

[6] Jordan was excited and moving around. For safety reasons, the officers temporarily restrained Jordan in handcuffs and subsequently conducted a safety sweep of Jordan's home ahead of the probation search. During the search of Jordan's home, the probation officers discovered items associated with the manufacture of methamphetamine, including a smoking device containing a white powdery substance, foil with burnt residue, small plastic baggies, and a salt grinder. In the presence of the officers, Jordan volunteered information about the existence of a methamphetamine lab inside his garage. Jordan led the officers to the garage where the officers recovered a clear plastic bottle with a bubbling substance situated in an old radio box. Due to the presence of the methamphetamine lab, the officers read Jordan his *Miranda* rights. In turn, Jordan requested Officer Randol to "get the stuff out here." (Tr. p. 69). When Officer Randol asked Jordan if he wanted the officers to go inside his home and remove the meth-related items found during the probationary search, as well as the clear plastic bottle located in the garage, Jordan stated "yes . . . get them out of the house." (Tr. p. 69).

[7] Due to what he perceived as an active methamphetamine lab in Jordan's garage, Officer Randol contacted the Indiana State Police to process the scene and safely dispose of the items. A subsequent search by Indiana State Trooper Andrew Smith (Trooper Smith) yielded other items associated in the manufacture of methamphetamine, including a half-full 32 oz. bottle of Coleman fuel, a meat grinder containing water softener salt pellets, a short pink plastic straw with a white powdery substance, a canister of sea salt, two burnt foils, numerous small plastic baggies, a burnt glass pipe, a plastic measuring cup with residue in it, pliers, several burnt lithium battery casings that were cut in half, an ammonia reaction vessel, a 20 oz. bottle of sulfuric acid drain cleaner, a white granular substance that tested as ammonia sulfate, two small plastic Ziploc bags containing an off-white substance that tested positive for lye and ammonia nitrate, coffee filters, a large digital scale, three packaged needles, and hydrogen peroxide. Furthermore, through a field test, Trooper Smith determined that the plastic bottle located in the garage served as the vessel for an active one-pot methamphetamine lab. In addition, the Indiana State Police Laboratory established that a white substance recovered from Jordan's home was methamphetamine weighing 0.54 grams.

[8] On August 8, 2014, the State charged Jordan with Count I, dealing in methamphetamine, a Level 4 felony; Count II, possession of methamphetamine, a Level 5 felony; Count III, possession of precursors, a Level 6 felony; Count IV, maintaining a common nuisance, a Level 6 felony; and Count V, possession of paraphernalia, a Level 6 felony. On October 29,

2015, Jordan, through counsel, filed a motion for a speedy trial. Accordingly, the matter was set for a two-day jury trial beginning on December 17, 2015; however, due to Jordan's motion for waiver of jury trial on December 11, 2016, the matter was set for a bench trial.

[9] Jordan's bench trial was held on December 17, 2015. During trial, Jordan objected to the admission of the probation order from Noble Superior Court for his prior drug offenses; however, the trial court admitted the order pursuant to the business record exception under Indiana Evidence Rule 803(6). Jordan also objected to the admission of the statements he made to the officers during the search, claiming that he had not been advised his *Miranda* rights. On that issue, the trial court denied Jordan's objection indicating that Jordan was not in custody nor was he interrogated when he uttered the statements. Additionally, Jordan objected to the search of his residence and he moved to suppress the photographs taken by Trooper Smith based on grounds that the search violated his rights under Article 1, Section 11 of the Indiana Constitution, all of which the trial court denied. Over Jordan's objection, the trial court admitted the Indiana State Police Laboratory certificate of lab analysis, depicting that a white substance recovered from Jordan's home was 0.54 grams of methamphetamine. At the close of the parties' arguments, the trial court took the matter under advisement. On December 31, 2015, the trial court entered findings of facts and legal conclusions finding Jordan guilty of Counts I through IV, and guilty of Class A misdemeanor possession of paraphernalia, the lesser included offense of Count V. Jordan's sentencing hearing was held on

February 1, 2016.  At the close of the evidence, the trial court sentenced Jordan to ten-years with two years suspended to probation for Count I.  On Count II, Jordan was sentenced to four years.  As for Counts III, IV and V, Jordan was sentenced to concurrent one-year sentences.  Counts I and II were to run consecutively; and Counts III, IV and V were to run concurrently with Count II.

[10]	Jordan now appeals.  Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I.  *Admission of Evidence*

[11]	A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of abuse of discretion. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000).  When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision.  *Id*.  A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected.  Ind. Evidence Rule 103(a).  In determining whether error in the introduction of evidence affected a defendant's substantial rights, we assess the probable impact of the evidence on the jury. *Sparkman*, 722 N.E.2d at 1262.

### A.  *Business Records Exception*

[12]	Jordan first challenges the trial court's admission of State's Exhibit 1, his probation order from Noble Superior Court.  He argues that State's Exhibit 1

was hearsay, and therefore should not have qualified for admission under the business records exception.

[13] Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Indiana Evidence Rule 801(c). Hearsay is inadmissible unless it falls under a recognized exception. Evid. Rule 802. One such exception exists for records that satisfy the requirements of Evid. Rule 803(6), which provides, in part,

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> ....
>
> (6) **Records of a Regularly Conducted Activity**. A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[14] It is well established that the reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by

the repetition, and from the fact that the person furnishing the information has a duty to do it correctly. *Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997). Therefore, the proponent of a business record can satisfy the requirements of Evidence Rule 803(6) "by calling a witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document." *Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006). "The witness need not have personally made or filed the record or have firsthand knowledge of the transaction represented by it in order to sponsor the exhibit." *Id*. Moreover, a sponsoring witness is not required to testify that he knows the person who recorded the information had personal knowledge of the transactions. *Payne v. State*, 658 N.E.2d 635, 645 (Ind. Ct. App. 1995), *trans. denied*. Records kept in the regular course of business are presumed to have been created by someone with knowledge, unless there is a showing to the contrary. *Id*.

[15] In the instant case, during the State's case-in-chief the State presented Wheeler, Jordan's probation officer, with a document which was yet to be marked as State's Exhibit 1. Jordan, through counsel, objected to the admission of that exhibit on the basis that Wheeler did not prepare, or seemed to have had personal knowledge of the document. In an effort of establishing the foundational requirements prior to the admission of State's Exhibit 1 under the business record exception, the following exchange occurred.

> Q. Are those [] records kept in the common course of business at your Probation Department?

A. Which records [?]

Q. That.

A. Yes.

Q. This record?

A. Yes. That is kept in their probation file. We have intake officers who do intakes on probation. Those days rotate. It looks like the intake was done by [] probation officer Jason White on January 30th of 2014.

(Tr. p. 22). Jordan, through counsel, maintained that that the statements contained in the exhibit was hearsay and that the State did not present the necessary evidence to have them admitted under the business records exception to the hearsay rule. After hearing the parties' arguments, the trial court offered its ruling stating that:

> Well, I think [] my ruling has been that this is a probation officer in a department, that this is a document that is commonly prepared by all of the officers in that department. It is [] a routine document that all of the officers are familiar with, and that it does fall within the business records exception, which is an exception to the hearsay rule. So my ruling is that your objection is overruled. There has been an offer to admit the document. I will show it admitted into evidence. State's Exhibit One is admitted into evidence.

(Tr. p. 25). Jordan's argument on appeal is that Wheeler did not specifically state that the document was a probation order and further claims that Wheeler "merely testified that an unidentified record was kept in the usual course of

business at the probation department. [] Neither Wheeler nor the prosecutor specified" that "State's Exhibit 1 was that document." (Appellant's Amended Br. p. 19) (internal citation marks omitted). Notwithstanding Jordan's assertion, it is apparent from the record that Wheeler was presented with State's Exhibit 1 before testifying, and after viewing at it, he appeared to have had a functional understanding of the document. Through Wheeler's testimony, the State established that State's Exhibit 1 was kept in the regular course of the Noble County Probation Department business, and the information contained in that exhibit was compiled and placed in the probation file by an intake officer who had personal knowledge of the transaction and who had a duty to generate accurate information. Accordingly, we conclude that the State laid a proper foundation for the admission of State's Exhibit 1 and the trial court did not abuse its discretion in admitting it under the business record exception.

## B. *Chain of Custody*

[16] Jordan also contests the admission of State's Exhibit 4, a certificate of lab analysis from the Indiana State Police Laboratory establishing that a white powdery substance recovered from Jordan's home was methamphetamine. According to Jordan, the State failed to establish a sufficient chain of custody for the methamphetamine.

[17] To establish a proper chain of custody, the State must give reasonable assurances that the evidence at issue remained in an undisturbed condition. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002). The State bears a higher burden to establish the chain of custody of fungible evidence whose appearance

is indistinguishable to the naked eye. *Id.* However, the State need not establish a perfect chain of custody, and once the State strongly suggests the exact whereabouts of the evidence, any gaps in the chain of custody goes to the weight of the evidence, not its admissibility. *Id.* Moreover, there is a presumption of regularity in the handling of evidence by officers, and there is a presumption that officers exercise due care in handling their duties. *Id.* To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with. *Id.*

[18] Jordan argues that there is a gap in the chain of custody because Officer Randol did not explicitly state the original location of the clear plastic bag containing the methamphetamine. Jordan adds that there was no evidence that the plastic bag was sealed prior to its submission to the Indiana State Police Laboratory for testing. We find that Jordan's argument regarding an alleged gap in the chain of custody goes to the weight of the evidence, and not to its admissibility. *McCotry v. State*, 722 N.E.2d 1265, 1267 (Ind. Ct. App. 2000). Further, when the evidence is handled by public officers, there is a presumption that they use due care and that the evidence is handled with regularity. *Id.* Turning to the record, Officer Randol testified that he offered a plastic bag containing white powdery residue to the State lab for testing. Although Officer Randol could not recall the specific location of where he seized the bag, he indicated that it was recovered in the home that "was searched on August 7th." (Tr. p. 154). Notably, there were no irregularities specified in the certificate of lab analysis.

Specifically, the reported stated, "sealed plastic bag containing a small ziplock [sic] plastic bag containing an off white chunky substance." (State's Exh. 4). Here, we find that Officer Randol's testimony provided a reasonable assurance that the clear plastic bag containing the methamphetamine remained undisturbed as it passed from his custody to the State lab for testing. As noted, the State is under no obligation to establish a perfect chain of custody, and Jordan has offered no evidence to overcome the presumption of regularity and due care exercised in the handling of the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the methamphetamine into evidence.

[19] To the extent that Jordan now claims that the trial court abused its discretion in admitting State's Exhibit 4 because it was not connected to this case, he has waived this argument on appeal. At trial, Jordan only objected to the admission of State's Exhibit 4 on grounds that the State had failed to establish chain of custody and that he was denied a right to cross-examine the witness. As a general rule, the failure to object at trial results in a waiver of an issue on appeal. *Bruno v. State*, 774 N.E.2d 880, 883 (Ind. 2002). The rule of waiver in part protects the integrity of the trial court in that the trial court cannot be found to have erred as to an argument that it never had an opportunity to consider. *T.S. v. Logansport State Hosp.*, 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), *trans. denied*. Moreover, a defendant cannot object on one ground at trial and then present a different claim of error on appeal. *See Lyons v. State*, 976 N.E.2d 137, 141 (Ind. Ct. App. 2012).

## II. *Article 1, Section 11 of the Indiana Constitution*

[20] Jordan contends that the probationary and law enforcement search conducted at 8375 East 800 South property violated his rights under Article 1, Section 11 of the Indiana Constitution.[1, 2] We initially note that the purpose of Article 1, Section 11 of the Indiana Constitution "is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006). "The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id*. at 340. Under the Indiana Constitution, the legality of

---

[1] Although Jordan argues that the search also violated his rights under the Fourth Amendment of the United States Constitution, he appears to have abandoned his Fourth Amendment challenge on appeal since he only provides an analysis under the Indiana Constitution. It is well established that failure to make a cogent argument constitutes waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8).

[2] Jordan claims that the search was illegal because the State *failed to prove that he resided* at 8375 East 800 South, LaGrange County, Indiana. To the extent that Jordan denies living at the searched house, it might bring about a potential standing issue, and in essence without standing he would not have been allowed to challenge the search under the Indiana Constitution. Our supreme court has held that to challenge a search under the Indiana Constitution, "a defendant must establish ownership, control, possession, or interest" in the premises searched. *Campos v. State*, 885 N.E.2d 590, 598 (Ind. 2008) (quoting *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996)). In the instant case, the record is replete with references establishing that Jordan did exercise exclusive control over the house at 8375 East 800 South, in LaGrange County; therefore, it gave him standing to challenge the search. At trial, Officer Randol testified that when he arrived at the 8375 East 800 South Property, he encountered Messer standing in the driveway, and Messer stated that she "was there to get a bag of clothes that were at [Jordan's]." (Tr. p. 87). In addition, at the officers' instruction, Messer requested Jordan to exit the house. When the officers encountered Jordan, Jordan offered information regarding the existence of a meth lab thus depicting that he was familiar with the layout of the property. Here, the evidence leads us to the conclusion that Jordan had control, possession or interest of the home located at 8375 East 800 South, LaGrange County, Indiana. Accordingly, Jordan's argument that he did not reside at said property therefore fails.

a search depends on whether government conduct was reasonable under the totality of the circumstances. *Tuggle v. State*, 9 N.E.3d 726, 735 (Ind. Ct. App. 2014), *trans. denied*.

[21] In response to Jordan's contention that the search was unconstitutional, the State claims that the search conducted on August 7, 2014, was authorized because Jordan was on probation at the time, and it further directs us to Condition 6 of Jordan's probation order, stating:

> You shall waive your right against search and seizure, and permit a Probation Officer or any law enforcement acting on your Probation Officer's behalf to search your person, residence, motor vehicle, or any location where your personal property may be found to ensure compliance with probation.

(State Exh. 1). Notwithstanding the State's response, Jordan contends that "[U]nder the circumstances, even if the State proved" that he was on probation, "it was still required to establish it had *reasonable suspicion*" for the search. (Appellant's Amended Br. p. 36) (emphasis added).

[22] Most recently, in *State v. Vanderkolk*, 32 N.E.3d 775, 779 (Ind. 2015), a Fourth Amendment case, our supreme court very broadly held that probationers "who have consented or been clearly informed that the conditions of their probation . . . unambiguously authorize warrantless and suspicionless searches, may thereafter be subject to such searches during the period of their probationary . . . status." In the instant case, the State maintains that the search complied with these constitutional dictates and that the need for reasonable suspicion was

obviated because Jordan waived his rights as to search and seizure and agreed, by virtue of the terms and conditions of his probation, to warrantless and suspicionless searches of his property. We recognize that

> the crux of the *Vanderkolk* holding is that a probation search need not be supported by reasonable suspicion and may be predicated solely upon a valid search condition contained in the conditions of probation. Thus, a probationer's argument that a probation search lacked reasonable suspicion is unequivocally no longer a legitimate objection under the Fourth Amendment and *Vanderkolk.* Instead, only the method of execution, and not the scope, of the search would be subject to a reasonableness challenge.

*Hodges v. State*, 54 N.E.3d 1055, 1059, (Ind. Ct. App. 2016) (internal citations omitted).

[23] While the language of Article 1, section 11 is virtually identical to its Fourth Amendment counterpart, our supreme court has "made an explicit point to interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence." *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). Generally, under Indiana law, the reasonableness of a search or seizure turns on the "totality of the circumstances" and a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[24] However, in light of *Vanderkolk's* expansive endorsement of warrantless and suspicionless probation searches, this court in *Hodges* clarified that a separate

*Litchfield* analysis was unnecessary and further specified that it "would have made little sense for our Supreme Court to pen such a broad holding if the Court had simply intended to continue a requirement of prior reasonable suspicion for any probation-related search." *Hodges*, 54 N.E.3d at 1060. In keeping with the *Vanderkolk* analysis, which established that lack of reasonable suspicion is no longer a legitimate objection to the constitutionality of Indiana probationary searches, we conclude that the search in the instant case did not violate Jordan's rights under Article 1, Section 11 of the Indiana Constitution.

### III. *Advisement of Miranda Rights*

[25] In addition, Jordan interjects a Fifth Amendment claim concerning the statements he made to the officers at the scene. Jordan maintains that the statements were offered after he was placed in handcuffs and prior to the administration of *Miranda* warnings. *Miranda* prohibits the introduction at trial of any statement "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These protections are applicable only if the defendant has been subjected to custodial interrogation, which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

[26] In the present case, when the officers arrived at Jordan's property and informed Jordan that they were there to assist the probation officers with the routine

search, Jordan became excited and was "moving around." (Tr. p. 65). Based on Jordan's movements, the officers temporarily restrained Jordan for their own safety. While handcuffed, Jordan volunteered information indicating the presence of a methamphetamine lab in his garage. At trial, Jordan argued that he should have been advised of his *Miranda* rights since he was in custody at the time he offered the statements. In allowing Jordan's statements into evidence, the trial court ruled that "there was no interrogation which enveloped the necessity to provide [Jordan] with his *Miranda* [r]ights." (Tr. p. 65). The trial court further added that although Jordan was restrained at the time, the confinement was done for the officers' safety.

[27] We note that the police have the legal right to take reasonable steps to stabilize a situation such as this during the course of their investigation. *Williams v. State*, 959 N.E.2d 357, 359 (Ind. Ct. App. 2011), *trans. denied*. This includes placing an individual in handcuffs to enable the officers to conduct their investigation and ensure their own safety or the safety of others. Safety concerns of a police officer are a legitimate and weighty justification for such an intrusion. *Delatorre v. State*, 903 N.E.2d 506, 508 (Ind. Ct. App. 2009). Here, based on Jordan's conduct of moving around, the officers temporarily handcuffed Jordan for the purpose of protecting themselves.

[28] Notwithstanding the officers' concern for safety, its arguable that under the circumstances, Jordan's freedom was restrained such that *Miranda* warnings were required. When determining whether a person was in custody or deprived of his freedom, "the ultimate inquiry is simply whether there is a 'formal arrest

or restraint on freedom of movement' of the degree associated with a formal arrest." *Luna v. State*, 788 N.E.2d 832, 833 (Ind. 2003) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). This is determined by examining whether a reasonable person in similar circumstances would believe he is not free to leave. *Id.* (citing *Cliver v. State*, 666 N.E.2d 59, 66 (Ind. 1996), *reh'g denied*). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 433-434 (1991)). That said, we have held that an officer's knowledge and beliefs are only relevant to the question of custody if conveyed—through either words or actions—to the individual being questioned. *King v. State*, 844 N.E.2d 92, 97 (Ind. Ct. App. 2005). A police officer's "unarticulated plan has no bearing on the question" of custody. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind. 1995) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).

[29] In this case, despite the officers' testimony that Jordan was not in formal custody at the time he made the voluntary statements about the existence of a meth lab in the garage, their testimony had no bearing on how Jordan perceived their actions. The *safety concerns* issues were not articulated to Jordan, nor was Jordan informed that he was free to leave at any point in time. Applying the objective test to the facts of the case, a reasonable person would believe to be restrained in a manner similar to a formal arrest and that *Miranda* warnings were therefore required. When Jordan made the statements, there is no doubt

that he was in custody; he had been handcuffed and *Miranda* warnings were therefore necessary.

[30] However, we find that Jordan's statements were not subject to an interrogation. The term interrogation has been defined as "'express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect.'" *White v. State*, 772 N.E.2d 408, 412 (Ind. 2002). Notably, the concept of custodial interrogation does not operate to extend the *Miranda* safeguards to *spontaneous voluntary* statements made in the presence of police officers which are not in response to questions posed by law enforcement officers. *Gregory v. State*, 540 N.E.2d 585 (Ind. 1989). This is true even though a defendant is in custody of law enforcement officers at the time. *Id.* Turning to the facts of the case, when the officers explained to Jordan their reason for visiting, Jordan became excited and began moving around. The officers temporarily restrained Jordan and what followed was Jordan's impulsive statement indicating the presence of a meth lab in the garage. Because the record is absent of any evidence of the officers probing Jordan, it supports the notion that Jordan was under no compulsion to speak and therefore his statements were not made in violation of his *Miranda* warnings. Accordingly, we find no error here.

### V. *Sufficiency of the Evidence*

[31] Next, Jordan contests that the trial court's findings of fact and conclusions of law finding him guilty of the charged offenses as being unsupported by the evidence. We observe that "in a criminal case the trial court is not required to

make either findings of fact or conclusions of law." *Dozier v. State*, 709 N.E.2d 27, 30 (Ind. Ct. App. 1999) (citing *Nation v. State*, 445 N.E.2d 565, 570 (Ind. 1983)). Thus, the focus of our inquiry is not upon the remarks the trial court makes in a bench trial after having reached the conclusion that a defendant is guilty. *Id*. Rather, the question is whether the evidence presented to the trial court as fact-finder was sufficient to sustain the conviction. *Id*. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. (citing *Johnson v. State*, 671 N.E.2d 1203, 1209 (Ind. Ct. App. 1996), *trans. denied*). Instead, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id*. If there is substantial evidence of probative value to sustain the conviction, then it will not be set aside. *Id*.

[32] Jordan was convicted of a Level 4 felony, dealing in methamphetamine; a Level 5 felony, possession of methamphetamine; a Level 6 felony, possession of precursors; a Level 6 felony, maintaining a common nuisance; and a Class A misdemeanor, possession of paraphernalia. We will address each offense in turn.

A. *Dealing in Methamphetamine*

[33] Indiana Code section 35-48-4-1.1, provides, in part, that a person who:

> (1) knowingly or intentionally:
>
> > (A) manufactures;
> > (B) finances the manufacture of;
> > (C) delivers; or
> > (D) finances the delivery of;
> > methamphetamine, pure or adulterated; or

(2) possesses, with intent to:

(A) manufacture;
(B) finance the manufacture of;
(C) deliver; or
(D) finance the delivery of;
methamphetamine, pure or adulterated;

commits dealing in methamphetamine, a Level 5 felony, except as provided in subsections (b) through (e).

(b) A person may be convicted of an offense under subsection (a)(2) only if:

(1) there is evidence in addition to the weight of the drug that the person intended to manufacture, finance the manufacture of, deliver, or finance the delivery of the drug; or
(2) the amount of the drug involved is at least twenty-eight (28) grams.

(c) The offense is a Level 4 felony if:

(1) the amount of the drug involved is at least one (1) gram but less than five (5) grams; or
(2) the amount of the drug involved is less than one (1) gram and an enhancing circumstance applies.

With respect to Jordan's Level 4 dealing in methamphetamine offense, the record shows that when the officers arrived at 8375 East 800 South in LaGrange County, Indiana, they encountered Messer in the driveway who stated that she was there to get a bag of clothes from Jordan's house. Messer relayed to the officers that she had observed Jordan shaking a pop bottle near the garage area earlier that day. The probationary search of Jordan's home yielded items associated with the manufacture of methamphetamine—a

smoking device containing a white powdery substance, foil with burnt residue, small plastic baggies, and a salt grinder. Prior to the arrival of the probation officers, Jordan advised the officers that there was a meth lab on the property and he directed them to its location. In the garage, the officers located a clear plastic bottle with a bubbling substance situated in an old radio box. Trooper Smith testified that the plastic bottle recovered in the garage served as the vessel for an active one-pot methamphetamine lab. The State also introduced evidence of all the precursors and items necessary in manufacturing methamphetamine located throughout Jordan's garage and house. Mindful of the testimony and evidence presented at trial, we conclude that the State proved beyond reasonable doubt that Jordan was dealing in methamphetamine.

## B. *Possession Counts*

[34] With regards to Jordan's Level 5 felony, possession of methamphetamine, Indiana Code section 35-48-4-6.1 provides, in part:

> (a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine, a Level 6 felony, except as provided in subsections (b) through (d).

> (b) The offense is a Level 5 felony if:

> (1) the amount of the drug involved is at least five (5) grams but less than ten (10) grams; or
> (2) the amount of the drug involved is less than five (5) grams and an enhancing circumstance applies.

The certificate of lab analysis from the Indiana State Police Laboratory established that a plastic bag containing a white substance recovered from Jordan's home was methamphetamine, weighing 0.54 grams. In addition, an enhancing circumstance existed pursuant to Indiana Code section 35-48-1-16.5 (5) the existence of a one-pot ammonia reaction meth lab and items associated in the manufacturing of methamphetamine. Here, we conclude that there was sufficient evidence to find that Jordan possessed the methamphetamine.

[35] Turning to Jordan's Level 6 felony, possession of precursors, the State was required to prove that Jordan knowingly or intentionally possessed two or more chemical reagents or precursors with the intent to manufacture a controlled substance. I.C. § 35-48-4-14.5(e). During the search, Trooper Smith seized several ingredients necessary for manufacturing methamphetamine, including Coleman fuel, sulfuric acid drain cleaner, ammonia sulfate, sodium hydroxide, lithium metal, and hydrogen peroxide. Therefore, we conclude that sufficient evidence existed to support Jordan's conviction for possessing precursors.

[36] Lastly, to prove that Jordan committed Class A misdemeanor, possession of paraphernalia, the State was required to prove that he knowingly or intentionally possessed an instrument he intended to use to introduce a controlled substance into his body. I.C. § 35-48-4-8.3(a). The State presented evidence of a pink straw covered in residue and several hypodermic needles that were found in Jordan's house. Trooper Smith testified that the straw and needles could be used to introduce methamphetamine into a person's body.

Here, we conclude that was sufficient evidence that Jordan possessed paraphernalia.

## C. *Maintaining a Common Nuisance*

[37] As for Jordan's Level 6 felony, maintaining a common nuisance, the State was required to prove beyond a reasonable doubt that Jordan knowingly or intentionally maintained a building, structure, vehicle or other place that was used by Jordan for unlawfully manufacturing, keeping, offering for sale, selling, delivering, or financing the delivery of a controlled substance. I.C. § 35-48-4-13(b)(1) (2014). Much of Jordan's arguments are concentrated on his mistaken belief that the State failed to prove that he resided at the 8375 East 800 South property. As discussed above, the State provided ample evidence to demonstrate that Jordan lived at the 8375 East 800 South property. Moreover, we note that a person in control of a residence "may be found in control of any drugs" or other contraband "discovered therein." *Allen v. State*, 798 N.E.2d 490, 501 (Ind. Ct. App. 2003). At Jordan's bench trial, Officer Randol testified that when he arrived at the 800 South property, he encountered Messer standing in the driveway, and Messer stated that she "was there to get a bag of clothes that were at [Jordan's]." (Tr. p. 87). In addition, Jordan was inside the house when the officers arrived and Messer requested Jordan to exit the house. The search that was conducted at Jordan's premises yielded several precursors used to manufacture methamphetamine. From this, the trial court could have reasonably concluded that Jordan actually possessed the precursors and was using his residence to manufacture methamphetamine.

## VI. *Double Jeopardy*

[38] Last but not least, Jordan claims that his convictions for dealing in methamphetamine, possession of methamphetamine, and possession of precursors violate Indiana's prohibition against double jeopardy. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art. 1, § 14. "Indiana's Double Jeopardy Clause . . . prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins v. State,* 759 N.E.2d 633, 639 (Ind. 2001) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49.

[39] "An offense is the same as another under the actual evidence test when there is a reasonable possibility that the evidence used by the fact-finder to establish the essential elements of one offense may have been used to establish the essential elements of a second challenged offense." *Id.* The Indiana Supreme Court clarified this test in *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002), where the court held that the test is not whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense; rather, the test is

whether the evidentiary facts establishing the essential elements of one offense also establish all of the elements of a second offense. If the evidentiary facts establishing one offense establish only one or several, but not all, of the essential elements of the second offense, there is no double jeopardy violation. *Id*.

[40] The charging Information for dealing in methamphetamine alleged, in pertinent part, that on or about August 7, 2014, Jordan "did knowingly or intentionally manufacture, deal, sell, give, barter or trade METHAMPHETAMINE at the location of: 8375 E 800 S, County of LaGrange, State of Indiana . . . . Further, the aggregate weight of said METHAMPHETAMINE was LESS than three (3) grams." (Appellant's App. Vol II, p. 42).

[41] With regards to Jordan's possession of methamphetamine offense, the State averred that on or about August 7, 2014, Jordan "did knowingly or intentionally possess METHAMPHETAMINE at the location of: 8375 E 800 S, County of LaGrange, State of Indiana, and [Jordan] did not have a valid prescription of the said substance. Further, the aggregate weight of said METHAMPHETAMINE was OVER 5 grams and less than 10 grams." (Appellant's App. Vol II, p. 44).

[42] Lastly, the charging information relating to Jordan's offense of possessing precursors stated, in part, that on or about August 7, 2014, "at 8375 E 800 S" Jordan "did possess two (2) or more chemical reagents or precursors with intent to manufacture a controlled substance." (Appellant's App. Vol II, p. 46).

[43]     Jordan first claims that the half gram of methamphetamine was used to convict him for dealing and possessing the methamphetamine. A person who … knowingly or intentionally . . . manufactures . . . methamphetamine, pure or adulterated … commits dealing in methamphetamine. I.C. § 35-48-4-1.1(a)(1)(A). Indiana Code section 35-48-1-18 defines manufacture as

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

[44]     Jordan was also charged and convicted of possession of chemical reagents or precursors. In addition to proving that Jordan "possess[ed] two or more chemical reagents or precursors", the State was required to prove, as with the dealing charge, that he did so "with the intent to manufacture a controlled substance." *See* I.C. § 35-48-4-14.5.

[45]     Aside from the element of the intent to manufacture methamphetamine, separate and distinct facts were required and relied upon by the State to prove the two offenses. Here, we find that the State's evidence that the clear plastic bottle which Trooper Smith identified as a one-pot vessel for an active methamphetamine lab, established the dealing charge. Jordan's actual possession of one or more chemical reagents or precursors, including Coleman fuel, sulfuric acid drain cleaner, ammonia sulfate, sodium hydroxide, lithium metal, and hydrogen peroxide, established the possession of precursors charge.

As such, we conclude that there was no reasonable possibility that the trial court considered the same evidence to establish all of the elements of both offenses. There is no double jeopardy violation.

[46] Lastly, Jordan argues that his convictions for dealing in methamphetamine and possession of methamphetamine subjected him to double jeopardy. As noted, for the dealing charge, the charging information alleged that Jordan did knowingly or intentionally manufacture methamphetamine. Manufacturing includes the "production, preparation . . . or processing of a controlled substance. . ." I.C. § 35-48-1-18. We have held that convictions for manufacturing methamphetamine and possession of methamphetamine may be sustained, specifically with the finished product supporting the possession conviction and the unfinished product supporting the manufacturing conviction. *Storey v. State*, 875 N.E.2d 243, 248-50 (Ind. Ct. App. 2007). It has also been established that the evidence need only show that the manufacturing process has begun to sustain a conviction for manufacturing methamphetamine. *Dawson v. State*, 786 N.E.2d 742, 747-48 (Ind. Ct. App. 2003). In this case Jordan was found in possession of 0.54 grams of methamphetamine. The officers also found numerous accoutrements in the residence that were used to manufacture additional methamphetamine. As such, the trial court could have reasonably concluded that Jordan was in possession of methamphetamine and was in the process of manufacturing an additional amount of the drug. As a result, we reject Jordan's argument that convicting him of both dealing in

methamphetamine and possession of methamphetamine violated the prohibition against double jeopardy.

# CONCLUSION

[47] Based on the foregoing, we conclude that (1) the trial court did not abuse its discretion in admitting some of the State's Exhibits; (2) pursuant to his probation order, Jordan consented to the search and therefore his rights under Article 1, Section 11 of the Indiana Constitution were not violated; (3) *Miranda* warnings prior to Jordan's voluntary statements to the officers were not required; (4) there was sufficient evidence to convict Jordan of his charged offenses; and (5) Jordan's conviction for dealing in methamphetamine, possession of methamphetamine, and possession of precursors did not violate double jeopardy principles under the actual evidence test.

[48] Affirmed.

[49] Crone, J. and Altice, J. concur