

I N   T H E

# Court of Appeals of Indiana

Marvin Moyers,

*Appellant-Defendant*

*v.*

State of Indiana

*Appellee-Plaintiff*



FILED

Dec 31 2024, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

December 31, 2024

Court of Appeals Case No.
24A-CR-939

Appeal from the Ohio Circuit Court

The Honorable F. Aaron Negangard, Judge

Trial Court Cause No.
58C01-2206-F1-1

**Opinion by Judge Bradford**

Judges Foley concurs.

Judge Bailey concurs in part and dissents in part with opinion.

**Bradford, Judge.**

# Case Summary

In July of 2022, Gregory Luhrsen came upon Marvin Moyers as Moyers was attempting to steal items out of the garage of his Ohio County home. When confronted, Moyers lunged at Luhrsen and beat him unconscious. Moyers forced Luhrsen back into his home and removed many more of his belongings from the home; this process involved Moyers tying Luhrsen up a total of three times, periodically removing Luhrsen's restraints so that he could assist in removing the belongings. For much of this time, Moyers was armed with a handgun that he had found in Luhrsen's kitchen.

A jury ultimately found Moyers guilty of Level 1 felony burglary, Level 2 felony burglary, Level 3 felony criminal confinement while armed with a deadly weapon, Level 4 felony criminal confinement resulting in moderate bodily injury, two counts of Level 5 felony battery, and two counts of Level 6 felony theft. The jury also found Moyers guilty of a firearm enhancement and that he was a habitual offender. The trial court merged Moyers's convictions for Level 2 felony burglary, both counts of battery, and both counts of theft into the count of Level 1 felony burglary due to double jeopardy concerns and sentenced him to an aggregate term of 100 years of incarceration. Moyers contends that his convictions for Level 3 felony criminal confinement while armed with a deadly weapon and Level 4 felony criminal confinement resulting in moderate bodily injury violate Indiana prohibitions against substantive double jeopardy. Because we disagree, we affirm.

## Facts and Procedural History

[3] On June 26, 2022, Luhrsen woke up at around 8:15 a.m. and heard a car running in his driveway, which struck him as odd. Luhrsen saw what he believed to be his ex-girlfriend's car from a window and went downstairs and out into the garage to investigate, only to find Moyers holding his table saw. When Luhrsen asked Moyers what he was doing in his house, Moyers lunged at him, knocking him over. Moyers punched Luhrsen in the face repeatedly, causing him to lose consciousness.

[4] When Luhrsen came to, he was on the floor and Moyers had his left arm behind his back and was attempting to put his right arm behind his back as well. Luhrsen's nose was bleeding, and his right eye "was hurt pretty bad and it was painful." Tr. Vol. III p. 179. Moyers took Luhrsen's wallet and the key fob for his car. While restraining Luhrsen, Moyers maneuvered him into the house and upstairs. Moyers left Luhrsen in the living room and retrieved Luhrsen's cellular telephone and a twelve-gauge shotgun from a bedroom. Moyers told Luhrsen to sit down on a love seat and proceeded to bind his arms and legs with a telephone cord.

[5] At some point, Moyers found a .45 caliber handgun in the kitchen and carried it in his hand as he continued to rummage. After filling luggage, duffel bags, and a garbage can with some of Luhrsen's belongings, Moyers untied Luhrsen's feet and had him help carry the belongings to the garage. When the belongings had been carried to the garage, Moyers tied up Luhrsen in the garage and rummaged through it and Luhrsen's car. Moyers cut Luhrsen's bindings so that

he could help him carry more of Luhrsen's belongings to the garage and, when that was accomplished, tied him to a chair in the dining room. While Moyers was moving even more of Luhrsen's property to the garage, Luhrsen untied himself, ran out the front door, and eventually had a neighbor contact the police, who identified Moyers after an investigation.

[6] The State eventually charged Moyers with Level 1 felony burglary, Level 2 felony burglary, Level 3 felony aggravated battery, Level 3 felony criminal confinement while armed with a deadly weapon, Level 3 felony criminal confinement resulting in serious bodily injury, two counts of Level 5 felony battery, and two counts of Level 6 felony theft. The State also filed a firearm enhancement and alleged that Moyers was a habitual offender.

[7] Moyers's jury trial began on January 16, 2024. The jury found Moyers guilty of Level 1 felony burglary, Level 2 felony burglary, Level 3 felony criminal confinement while armed with a deadly weapon, the lesser-included Level 4 felony criminal confinement resulting in moderate bodily injury, two counts of Level 5 felony battery, and two counts of Level 6 felony theft. The jury also found Moyers guilty of the firearm enhancement and that he was a habitual offender. The trial court merged Moyers's convictions for Level 2 felony burglary, both counts of battery, and both counts of theft into the conviction for Level 1 felony burglary due to double jeopardy concerns and sentenced him to an aggregate term of 100 years of incarceration.

## Discussion and Decision

[8] Moyers contends only that his two criminal-confinement convictions violate Indiana prohibitions against substantive double-jeopardy. "Substantive double-jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020). The analysis laid out in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), governs the first category of cases, while *Powell*'s analysis covers the second. *Powell*, 151 N.E.3d at 263. Even though the parties both argue that the *Powell* test applies to Moyers's claim, we do not agree.

[9] The two offenses at issue in this case are, in fact, "multiple statutes with common elements," to which *Wadle* applies, even if they are defined by different subsections of the same section of the Indiana Code. *Id*. Despite the Indiana Supreme Court's use of the term "single statute,"[1] there is nothing imprecise about *Powell*'s explicit statement that it applies to "'two counts of the *same* offense[,]'" *Powell*, 151 N.E.3d at 263 (citation and footnote omitted, emphasis in *Powell*), and it almost goes without saying that if two offenses have

---

[1] Black's Law Dictionary defines "statute" as "[a] law enacted by a legislative body; specif., legislation enacted by any lawmaking body[.]" *Statute*, BLACK'S LAW DICTIONARY (11th ed. 2019). By this definition, it is possible to have any number of "statutes" included in the same unit of code.

different elements (as do the two offenses that concern us here), they are not, in fact, the "same offense."[2]

[10] That said, the *Wadle* test requires us to "first look to the statutory language" for each charge. 151 N.E.3d at 248. If the language of either statute "clearly permits" multiple punishments, there is no double-jeopardy violation. *Id.* Here, neither of the relevant subsections of Indiana Code section 35-42-3-3 clearly permits multiple punishments, so we proceed to step two.

[11] The second step is to determine whether either of the offenses is inherently or factually included in the other. *Wadle*, 151 N.E.3d at 248. An offense that is inherently included in another is one that

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or

---

[2] We do not think that how the General Assembly chooses to arrange the various criminal offenses in the Indiana Code should be a determining factor in how we evaluate claims of alleged double jeopardy. Let us suppose that, instead of defining both relevant types of criminal confinement in the same code section, the General Assembly chose to define them in two different code sections. Moyers has now been convicted pursuant to separate sections of the Indiana Code, one entitled "Criminal Confinement Causing Moderate Bodily Injury" and the other, "Criminal Confinement Committed While Armed With a Deadly Weapon." Pursuant to the approach advocated by Moyers, his two hypothetical offenses—even though they have precisely the same elements as they do in reality—must now be evaluated pursuant to *Wadle* because they no longer violate a "single statute." Taking this concept to its logical extreme in the opposite direction, suppose instead that the General Assembly decided to rearrange the Indiana Code so that all criminal offenses were defined in the various subsections of one (very lengthy) code section entitled "Criminal Offenses." According to Moyers's approach, *Wadle* no longer has any possible application under any circumstances because all crimes would violate a single statute.

public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168.

[12] An offense, even if not inherently included in another, is factually included in the other if the charging information alleges "that the means used to commit the crime charged include all of the elements of the alleged lesser included offense[.]" *Norris v. State*, 943 N.E.2d 362, 368 (Ind. Ct. App. 2011), *trans. denied*. The Indiana Supreme Court has recently clarified that "when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**." *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024) (emphasis in *A.W.*). "Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial." *Id*. "The factually included inquiry at this step is thus limited to facts on the face of the charging instrument." *Id.* "'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *Id.* (quoting *Wadle*, 151 N.E.3d at 248).

[13] We conclude that neither of Moyers's felony criminal confinement offenses is included in the other, either inherently or as charged. The relevant statutory language is as follows:

> (a) A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement[.]
>
> (b) The offense of criminal confinement defined in subsection (a) is:

[…]

> (2) a Level 4 felony if it results in moderate bodily injury to a person other than the confining person[ and]
>
> (3) a Level 3 felony if it:
>
>> (A) is committed while armed with a deadly weapon[.]

Ind. Code § 35-42-3-3(a), -3(b)(2), -3(b)(3)(A). As can readily be seen, each of the two criminal-confinement offenses in this case contains at least one element the other does not: the Level 3 felony requires proof that a defendant committed the confinement while armed with a deadly weapon, and the Level 4 felony requires proof that the confinement resulted in moderate bodily injury to someone other than the confiner.

[14] Moreover, the two provisions do not differ only in that one involves a "less serious harm or risk of harm to the same person, property, or public interest[] or a lesser kind of culpability" than the other; the two offenses differ from one another in that they involve harms (or the risk of harms) that are distinct. *See* Ind. Code § 35-31.5-2-168(3). A person other than the confiner getting moderately injured is not quite the same harm or risk of harm as the harm caused or the risk of harm that existed by virtue of the confiner being armed with a deadly weapon. Not only does the presence of a deadly weapon carry with it the risk of death or very serious injury that might not otherwise be present in a particular confinement, it also almost certainly greatly increases the mental trauma suffered by the victim or any witnesses. On a more mundane level, the presence of a deadly weapon such as a firearm also enhances the risk of property damage. We conclude that neither the offense of criminal

confinement committed while armed with a deadly weapon nor criminal confinement resulting in moderate bodily injury is inherently included in the other.[3]

[15] We also conclude that neither of Moyer's offenses, as charged, is factually included in the other. The charging information for Moyers provides, in part, as follows:

> **Count IV: Criminal Confinement (Armed with a Deadly Weapon)**
>
> On or about June 26, 2022 Ohio County, State of Indiana, Marvin Moyers, Jr. did knowingly or intentionally confine Gregory Luhrsen, without his consent and said offense was committed while armed with a deadly weapon, to-wit: .45 caliber Hi-Point handgun.
>
> [....]
>
> **Count V: Criminal Confinement (Serious Bodily Injury)**
>
> On or about June 26, 2022 Ohio County, State of Indiana, Marvin Moyers, Jr. did knowingly or intentionally confine Gregory Luhrsen, without his consent and said offense resulted in serious bodily injury to Gregory Luhrsen.

Appellant's App. Vol. II p. 59. The evidence tending to prove Luhrsen's moderate bodily injury does nothing to establish that Moyers committed the confinement while armed with a deadly weapon, and vice versa. This ends the

---

[3] Let us suppose that the jury had found Moyers guilty of Level 3 felony criminal confinement causing serious bodily injury and Level 4 felony criminal confinement causing moderate bodily injury. In this scenario, the latter offense is unquestionably inherently included in the former because the offenses differ *only* in the degree of the same harm (bodily injury) to the same person (Luhrsen).

analysis, with Moyers having failed to establish a substantive double-jeopardy violation.[4]

[16] We affirm the judgment of the trial court.

Foley, J., concurs.
Bailey, J., concurs in part and dissents with opinion.

ATTORNEY FOR APPELLANT

Victoria Bailey Casanova
Casanova Legal Services, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

---

[4] Because neither of Moyers's offenses is inherently nor factually included in the other, we do not proceed to step three of the *Wadle* analysis, *i.e.*, we engage in no analysis of the evidence actually presented at trial.

> If a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) "examine the **facts underlying those offenses**, as presented in the charging instrument and as adduced at trial." *Wadle*, 151 N.E.3d at 249 (emphasis added) (citing *Bigler v. State*, 602 N.E.2d 509, 521 (Ind. Ct. App. 1992), *trans. denied*). Step 3 functions as a cabined version of *Richardson*'s actual evidence test, and it serves an important, practical role in our double jeopardy analysis: to facilitate the distinction between what would otherwise be two of the "same" offenses. *See id.* at 249 n.27. So, at this final step, a court may only then probe the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id.* at 249.

*A.W.*, 229 N.E.3d at 1071 (emphasis in *A.W.*).

**Bailey, Judge, concurring in part and dissenting in part with opinion.**

[17]     I dissent in part, because I am persuaded that Moyers's multiple convictions for Criminal Confinement constitute a substantive double jeopardy violation. Confinement may be accomplished by various means but, unless it is interrupted, it is still one confinement. Moyers confined his victim, Luhrsen, by alternately using restraints, applying other physical force, threatening death, and pointing a firearm. Moyers caused Luhrsen to suffer moderate bodily injury. Two charges were lodged: one referencing a means by which Moyers accomplished confinement – use of a deadly weapon – and the other referencing a consequence, that is, bodily injury to Luhrsen. Either the means used, or the consequence, has elevated the offense in degree of severity, but does not, in my view, constitute a separate offense. The multiplicity of elevating factors does not portend an inquiry into included elements.[5]

[18]     According to Moyers, only one offense was committed because Luhrsen was not free at any time during the incident; however, according to the State, Luhrsen ended his confinement by breaking free and Moyers committed the offense of confinement a second time. The question distills to: was there a single offense or two distinguishable offenses?

_____

[5] *See e.g., Jones v. State*, 159 N.E.3d 55, 64 (Ind. Ct. App. 2020) (recognizing that "The gravamen of the offense [of kidnapping] is removal; a particular result or motive can elevate the offense, but does not form the basis of a second, discrete offense"), *trans. denied*.

[19]   A prosecutor has absolute discretion in charging. *See Adams v. State,* (1974) 262 Ind. 220, 314 N.E.2d 53 (observing that, where a defendant commits an act which is in violation of more than one criminal statute, the State has "the option of prosecuting ... under any or all of the applicable statutes." However, a multiplicity of convictions may be subject to constitutional and statutory constraints. Under the common law pre-dating *Wadle* and *Powell*, an appellant convicted of multiple counts of criminal confinement could present an argument under the continuous crime doctrine, which focused upon whether there was "one continuous transaction ... closely connected in time, place, and continuity of action." *Hines v. State*, 30 N.E.3d 1216, 1221-22 (Ind. Ct. App. 2015). This straightforward inquiry is now subsumed in *Wadle* and *Powell*, neither fitting like a glove, but from which we must select a framework. One involves a same-elements step and the other does not. The multi-step inquiry *may* ultimately reach the matter of whether there was only one time-compressed act, but it may not, depending upon the framework selected. And *Wadle* and *Powell* lead to diverse outcomes here. For the reasons expressed below, I believe that, given our choices, *Powell* is the applicable framework.[6]

---

[6] There is also precedent – in the context of dual arson convictions – for the use of the *Powell* framework where "a single criminal act or *transaction* violates a single statute and results in multiple consequences." *Morales v. State*, 165 N.E.3d 1002, 1009 (Ind. Ct. App. 2021), *trans. denied* (emphasis added). And in *Jones v. State*, 159 N.E.3d 55 (Ind. Ct. App. 2020), *trans. denied*, the Court applied the *Powell* analysis to two counts of kidnapping (one elevated because of bodily injury and one elevated due to an intent to obtain ransom). The Court observed that the multiple counts were distinguished by "result and motive" but were not separate offenses. *See id.* at 65. In *Barrozo v. State*, 156 N.E.3d 718 (Ind. Ct. App. 2020), the Court applied the *Powell* analysis and concluded that two counts of reckless driving could not stand. The Court observed: "The offense may be elevated—and the penalty enhanced—if a specific result or consequence occurs, such as

[20] In Count IV, the State charged Moyers with Criminal Confinement, as a Level 3 felony, alleging:

> On or about June 26, 2022 Ohio County, State of Indiana, Marvin Moyers, Jr. did knowingly or intentionally confine Gregory Luhrsen, without his consent and said offense was committed while armed with a deadly weapon, to-wit: .45 caliber Hi-Point handgun.

(App. Vol. II, pg. 59.)

[21] In Count V, the State charged Moyers with Criminal Confinement, as a Level 3 felony, alleging:

> On or about June 26, 2022 Ohio County, State of Indiana, Marvin Moyers, Jr. did knowingly or intentionally confine Gregory Luhrsen, without his consent and said offense resulted in serious bodily injury to Gregory Luhrsen.

(*Id.*)

[22] In *Wadle*, and in *Powell*, our Supreme Court "adopted two new tests for addressing claims of 'substantive double jeopardy' (i.e., claims concerning multiple convictions in a single prosecution, as opposed to 'procedural double jeopardy' claims, which concern convictions for the same offense in successive prosecutions)." *Carranza v. State*, 184 N.E.3d 712, 715 (Ind. Ct. App. 2022).

---

bodily injury . . . [b]ut the crime occurs—and may be punished—only once, because the unit of prosecution is the act of reckless driving." *Id.* at 727-28.

[23]     "Substantive double-jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates multiple statutes with common elements, or (2) when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell*, 151 N.E.3d at 263. The Court's decision in *Wadle* addressed the first scenario, and its decision in *Powell* addressed the latter scenario. *See Stone v. State*, 226 N.E.3d 829, 832 (Ind. Ct. App. 2024), *trans. denied*. Either directs our focus to the statute which has been enacted by our Legislature.[7] The framework of *Wadle* does not facially apply, as we are not looking at a "violat[ion] [of] multiple statutes with common elements." *Powell*, 151 N.E.3d at 263. That leaves the framework of *Powell*, in that Moyers was twice convicted under a single statute. It is not a perfect fit, because we are concerned not with multiple injuries to a single victim but with one moderate bodily injury and one means of commission, use of a gun. But the question fits. In the scenario of *Powell*, the question is "not whether one offense is included in the other" but rather "whether the same act may be twice punished as two counts of the *same* offense." *Id.* (emphasis in original).

---

[7] It is clear that, when an appellant has in fact committed discrete acts, the legislative choice to arrange various criminal offenses into a single statute does not transform multiple offenses into a single offense. *See Stone v. State*, 226 N.E.3d 829 (Ind. Ct. App. 2024) (the defendant was properly convicted of two counts of rape, in violation of a single statute, where one conviction was supported by vaginal intercourse and a second conviction was supported by anal sex); *Carranza v. State*, 184 N.E.3d 712 (Ind. Ct. App. 2022) (two convictions under the child molesting statute were proper were the defendant had digitally penetrated the victim and also had rubbed his penis on the victim's vagina), *trans. denied*; *Koziski v. State*, 172 N.E.3d 338 (Ind. Ct. App. 2021) (two child molesting convictions were proper where the defendant had licked the victim's vagina and digitally penetrated the victim).

[24] Under the *Powell* analysis, which applies when the State alleges multiple violations of the same statute, the reviewing court first reviews the text of the statute itself. "If the statute, whether expressly or by judicial construction, indicates a unit of prosecution,[8] then we follow the legislature's guidance and our analysis is complete." *Id.* at 264. Indiana Code Section 35-42-3-3(a) provides: "A person who knowingly or intentionally confines another person without the person's consent commits criminal confinement." To "confine" a person for these purposes means "to substantially interfere with the liberty of a person." I.C. § 35-42-3-1. The Criminal Confinement statute does not explicitly articulate a unit of prosecution.

[25] Absent the explicit articulation of a unit of prosecution, the court looks to whether the statute in question is a conduct-based statute or a result-based statute. *Powell*, 151 N.E.3d at 265. A conduct-based statute consists of an offense defined by certain actions or behavior (for example, operating a vehicle) and the presence of an attendant circumstance (such as intoxication). *Id.* at 265-66. The focus is upon the defendant's action rather than upon consequences of the action; the crime is complete once the offender engages in the prohibited conduct. *Id*. at 266.

---

[8] The Court described a "unit of prosecution" as a "division or fragmentation of a defendant's criminal conduct." *Powell*, 151 N.E.3d at 261. An example would be criminalizing the sale of each loaf of bread on a Sunday. *See id.*

On the other hand, a result-based statute states an offense "defined by the defendant's actions *and* the results or consequences of those actions." *Id.* (emphasis in original.) Examples include murder, manslaughter, battery, and reckless homicide, crimes which cause death or injury of another person. *See id.* Crimes defined by conduct rather than consequences permit only a single conviction, but crimes defined by consequence rather than by conduct "permit multiple convictions when multiple consequences flow from a single criminal act." *Id.*

The crime of Criminal Confinement is complete when the defendant, acting with the requisite culpability, "confines another person without the person's consent." I.C. § 35-42-3-3(a). This is so whether or not the action results in actual harm to a victim. Thus, Criminal Confinement is a conduct-based crime. As such, the statute permits only one conviction for a single act. *Powell*, 151 N.E.3d at 266. The review of Moyers's multiple convictions for Criminal Confinement then proceeds to the second step of the *Powell* analysis.

The second step is one in which the reviewing court determines "whether the facts – as presented in the charging instrument and as adduced at trial – indicate a single offense or whether they indicate distinguishable offenses." *Id.* at 264. To answer the question of whether criminal acts amount to a single offense or distinguishable offenses, "we look to whether those acts are 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id.* (quoting *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010)). If criminal acts are sufficiently distinct, multiple

convictions may stand; however, if the acts are continuous and indistinguishable, only a single conviction may stand. *Id.* at 264-65. "Any doubt counsels 'against turning a single transaction into multiple offenses.'" *Id.* at 265 (quoting *Duncan v. State*, 274 Ind. 457, 464, 412 N.E.2d 770, 775 (1980)).

[29] Here, the question is whether there was one continuous confinement or discrete events. Moyers argues that Luhrsen was continuously confined; the State responds that Luhrsen freed himself, "did run away," and thereafter his confinement was re-established. Appellee's Brief at 14. "A confinement ends when the victim both feels free and is, in fact, free from detention, and a separate confinement begins if and when detention of the victim is re-established." *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002).

[30] Luhrsen testified regarding his attempted escape as follows:

> State: One of the last trips that you made to the basement and you were in the garage, at some point were you trying to get away from him?
>
> Luhrsen: I did. He was on the other side of the garage, crawling around on some shelves, so that basement door was – I just opened the door and made a run for the stairs, but I didn't get too far. He kicked the door in. So I just, once again, stopped. He's got the gun so I'm not going to run, so I just moved back to the garage.

(Tr. Vol. III, pg. 188.)

State:  And I think you were just talking about you made it to the staircase when the door was kicked in and the defendant caught up with you?

Luhrsen:  Well, I just stopped.  I aint [sic] got to the stairs.  I just stopped and walked back towards the garage.  We both went back out to the garage.

State:  That's where you went?

Luhrsen:  Yes.

State:  I guess, how did you know to go back out to the garage?

Luhrsen:  Uh, well, I didn't know.  That's just where we were at so I went back out there.  Once again, he had the guns, so there was no putting up a fight.

(*Id.* at 189-90.)  The testimony does not support a conclusion that Luhrsen both felt free and was, in fact, free from detention.  Moyers maintained control over Luhrsen by physical restraints, threats, beatings, and display of firearms.  And, as previously observed, doubt militates against turning a single transaction into multiple criminal offenses.  *Powell*, 151 N.E.3d at 265.  Accordingly, I conclude that there was one continuous confinement of Luhrsen by Moyers.

[31]  Moyers's multiple convictions for a single transaction violate substantive double jeopardy principles.  When a double jeopardy violation has occurred, the remedy is to vacate the conviction carrying the lesser punishment.  *Starks v.*

*State*, 210 N.E.3d 818, 823 (Ind. Ct. App. 2023). I would vote to reverse Moyers's Level 4 felony conviction for Confinement.